John L. **GREER** and Estate of Russell Z. Greer, deceased, John L. Greer, executor, Petitioners–Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 79–1093.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1980.

Decided Nov. 19, 1980.

As Amended Jan. 23, 1981.

Richard D. Hall, Jr., Booth, Fish, Simpson, Harrison & Hall, Greensboro, N. C., for petitioners–appellants.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Tax Div., U. S. Dept. of Justice, Washington, D. C., Richard W. Perkins, Libero Marinelli, Jr., Stuart E. Seigel, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent–appellee.

Before ENGEL, MERRITT and JONES, Circuit Judges.

MERRITT, Circuit Judge.

Taxpayer appeals from a Tax Court determination that his racehorse operation constituted a trade or business of farming within the meaning of § 1251(e)(4) of the Internal Revenue Code.

On October 6, 1978, the Tax Court determined deficiencies of $66,502.41 in appellant's federal income tax for 1970 through 1972. During this period the taxpayer was involved in several corporations which yielded nonfarm income of approximately $580,000. During this time the taxpayer also owned thoroughbred racing horses. Expenses for maintaining the horses exceeded his income from racing and breeding during this three–year period by a total of $203,858. Over this same period he also claimed capital gains treatment on gains from horse sales totaling $173,949. Between 1970 and 1972 appellant donated two thoroughbred horses to charitable institutions and deducted $39,816.

The sole question for review is whether there was substantial evidence based upon the record as a whole to support the Tax Court determination that the taxpayer was engaged in the trade or business of farming, in whole or in part, from 1970 through 1972 within the meaning of § 1251 of the Internal Revenue Code and Regulation § 1.1251–3(e)(2). Section 1251 was enacted in 1969 to govern the gain from disposition of property used in farming where farm losses offset nonfarm income. The purpose behind § 1251 is generally to discourage use of farming simply to generate a tax loss to offset nonfarm income. If § 1251 applies, then § 1251(c) requires that part of the gain from the taxpayer's horse sales be treated as ordinary income rather than the common and more favorable long–term capital gain. In addition, petitioner's tax liability for the three years in question would be increased because § 170(e), which governs charitable deductions, would disallow a contribution to charity when the gain if the property were sold would be treated as ordinary income rather than long–term capital gain. Section 1251(e) governs definitions for the section. Section 1251(e)(4)(A) specifically provides that, "In the case of a taxpayer engaged in the raising of horses, the term 'trade or business of farming' includes the racing of horses." Treasury Regulation § 1.1251–3(e)(2) explains this provision:

> (2) *Horse racing.* If a taxpayer is engaged in the raising of horses, including horses which are bred or purchased, then for purposes of section 1251 the term "trade or business of farming" also includes the racing of such horses by the taxpayer. Thus, for example, if a taxpayer purchases a yearling and develops it to the racing stage, the term "trade or business of farming" includes the racing of such horse.

The facts in the case are generally undisputed. During the period in question appellant did not own a farm, but boarded the horses out or paid a trainer a flat fee to train and manage the horses. Horses which no longer produced at the race track were sold or donated to charitable institutions. The taxpayer owned 32 horses in 1970, 27 horses in 1971 and 20 horses in 1972. They are classified as studs (male horses which have been bred to a mare), brood mares (horses which have dropped a foal), foals (horses under one year old), and yearlings (horses between one and two years old).

Taxpayer claims that he was not involved in the "raising of horses" as required by § 1251(e)(4)(A), but that his primary activity was the racing of the horses. Any "raising" activity, he claims, was only incidental to the primary business activity of racing. The plaintiff claims, for example, that in 1970, only nine of the horses owned by him were raised and raced. The remaining horses were purchased and raced. The Tax Court and the Commissioner took a broader definition of the word "raise." The Tax Court defined "raise" as "To grow or breed. To bring up, rear." The Tax Court found that of the 36 horses petitioner owned during this time, 6 were studs in which he held a partial interest and which were used for breeding purposes. Nine of the remaining horses he raised from foal. The court concluded that "[a]t least to the extent that [the taxpayer] bred horses and raised them from foal he was engaged in the raising of horses during the years in question even though not primarily so engaged." The Tax Court did not ascribe a tax avoidance intent to the taxpayer. The court also declined to sever the taxpayer's "raising" activities from the racing activities, stating that § 1251 had "no de minimus provision excluding from its application those taxpayers who raise horses as a by–product of another business."

The Tax Court did not find it necessary to define at what step a horse was no longer being "raised" and instead was held solely for racing. The judge concluded that, at a minimum, horses either bred or purchased as foals required "raising." The language of § 1251(e)(4)(A) seems to state that horse racing activities should *not* be severed from raising activities. Section 1251(e)(4)(A) does not, as the Tax Court observed, contain any *de minimis* provision. It might be arguable that the intent behind § 1251(e)(4)(A) is not to subject a taxpayer's entire racing activities to § 1251 where only *one* horse is "raised" (however it is defined) and the rest are purchased and immediately raced. Here, however, the Tax Court found that the taxpayer was *at a minimum* raising 15 of the 36 horses owned during this time and that this was enough to subject

the taxpayer to liability under § 1251. Based upon the language of § 1251(e)(4)(A) and Reg. 1.1251–3(e)(2), we cannot say that the finding of the Tax Court was clearly erroneous. We accordingly affirm.