550 So.2d 308 (1989)
Evelyn TOUCHET, et al., Plaintiffs-Appellants Plaintiffs-Appellees,
v.
James G. GUIDRY, Jr., et al., Defendants-Appellees.
No. 88-469.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1989.
*309 Anthony M. Fazziok, Lafayette, for plaintiff-appellant.
Roy, Forrest & Lopresto, Alex A. Lopresto, III, New Iberia, for defendant-appellant.
Roy & Hattan, M. Candice Hattan, Onebane, Donohoe, Keith M. Borne, Lafayette, for defendant-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
LABORDE, Judge.
Evelyn Touchet, Linda Neveu, and Carl Neveu, on behalf of his minor son, Angelo, filed this suit for damages allegedly resulting from an automobile accident on September 7, 1982.[1] Linda Neveu and her son, Angelo, were guest passengers in the Touchet vehicle. Plaintiffs named as defendants: (1) James G. Guidry, Jr., the driver of the vehicle which rear-ended the Touchet vehicle; (2) Allstate Insurance Company (Allstate), his alleged liability insurer; (3) Cynthia Goodman, the registered owner of the vehicle Guidry was driving at the time of the accident; and (4) National Security Fire & Casualty Company (National), Touchet's uninsured motorist insurance carrier. After a trial on the merits, the trial court ruled that Allstate did not provide coverage to Guidry and dismissed plaintiff's suit against Allstate and Cynthia Goodman. It also rendered judgment in favor of the plaintiffs and against defendants, Guidry and National, awarding Evelyn Touchet $4,106.00 in total damages and Linda Neveu $6,276.00 in total damages. No damages were awarded for Angelo Neveu's claim. From this determination plaintiffs and National appeal. We affirm.

FACTS
This accident occurred on September 7, 1982, at about 12:30 p.m., in the village of Cade, St. Martin Parish, Louisiana. Evelyn Touchet was driving her truck in a westerly direction on LA 182. Her passengers included her sister, Linda Neveu and Mrs. Neveu's son, Angelo. Following the Touchet vehicle was Dean McPherson, and behind him was a car driven by James Guidry. As plaintiff slowed down to make a right turn, the McPherson vehicle passed her on the left, and she was hit from behind by defendant's vehicle. Evelyn Touchet testified that after the accident occurred, she went to see the other driver to find out if he required assistance.

DAMAGES
The trial court found that the Sept. 7, 1982 accident was caused solely by the inattentiveness of James Guidry. It awarded Evelyn Touchet $3,000.00 in general damages and Linda Neveu $5,000.00 in general damages. Finding no evidence of any injury sustained by Angelo Neveu, the trial court did not award anything for that claim. The precise facts of the accident and the issue of fault have not been appealed. Rather, the plaintiffs contend that the trial court's general damage awards are so inadequate as to constitute an abuse of discretion. After carefully reviewing the record, we cannot say that the trial court abused its discretion in the instant case. The trial court thoroughly reviewed the lay and medical testimony relevant in its Reasons for Judgment. It stated:
"[Evelyn Touchet] stated that no part of her body hit the vehicle she was in, but her neck twisted and later her shoulder hurt. She then had a series of headaches that lasted for a long time intermittently. She has not had headaches for the last year. At the time of the accident she had an infant that she was breast feeding and because of this she did not want to take medication as she felt it would pass on to the child, so she had to suffer pain for a period of time. Later the child was weaned and she did take various medications. She had no prior or subsequent *310 accidents to the one sued on. Before the accident she was active, liked to do physical things such as bowling, but after the accident she testified that she cannot do this any longer. She did note that her sister, Linda Neveu, was more seriously injured than she was, her sister being formerly outgoing but now somewhat depressed.
Concerning Evelyn Touchet, she was examined by Dr. D.E. Bourgeois, complaining of headaches. She was not taking medicine at the time because she was breast feeding her baby. She saw Dr. Bourgeois for headaches and pains. She said her head and neck were jerked in the accident. He found no muscle spasm in the cervical area. On September 20 he gave her an injection of Noraflex and prescribed physical therapy. She was complaining of neck pain and she was treated for that. On September 24 she was given Tylenol # 2 and Flexoril, two mild medicines. On October 12 she was discharged and told to return if she needed, and she has never returned. His medical bill was $355.
Dr. Bourgeois noted that these cases were not complicated. He found little or no objective findings on Evelyn and treated her simply on the complaints. He diagnosed Evelyn as having a mild cervical sprain and Linda Neveu as being a little worse.
Linda Neveu, age 28, testified that she and her sister were returning from the Winn Dixie store in New Iberia en route to Cade when the accident occurred. She was sitting in the front seat on the passenger side. When the accident occurred, she was scared, started screaming, fell on the floor and hit her head twice as the Guidry vehicle hit their vehicle on two quick occasions. Her head hit the dashboard, her arm and leg hurt, and she was frightened. She complained of headaches, arm ache, and her neck hurt. Various pains such as she had lasted for six months and now they still occur about twice a month, and she still has some minor stiffness. Since the accident, she used to go bowling and skiing but has not done so since because she is afraid to try these activities because her arms or legs might get worse. She saw Dr. Fournet on two occasions and has not paid his bill. Her lawyer recommended that she see Dr. Bourgeois, who did see her shortly after the accident. She quit seeing Dr. Bourgeois because she lives in St. Martinville and Dr. Bourgeois lives in New Iberia and it was inconvenient to do so. Instead, she went to Dr. Pope, a chiropractor suggested by her lawyer, Mr. Rippas. She quit seeing him because his bills were piling up. She saw Dr. Blanda of Lafayette in either September or early October of this year [1985]. She saw Dr. Lee, a chiropractor who succeeded Dr. Pope, the Friday before the trial. She too noted that she had no prior accidents or subsequent accident. She returned to work in about two months after the accident.
Dr. Kenneth Fournet of St. Martinville saw Linda on September 8, 1982, getting a history of the wreck that occurred the day before. She complained of headaches, arm pain and he noted muscle spasm. There were no lacerations or abrasions. He prescribed an analgesic, Zomax. She returned on September 15, complaining of neck pain, and he added muscle relaxers to the prescription. This was her last visit. No x-rays were taken. He charged $40 for these two visits and the Court has allowed $100 as an expert witness fee for testifying in court.
Dr. David Eldridge Bourgeois of New Iberia testified that he examined Linda Neveu shortly thereafter, on several occasions. She had contusions of her head, chest and neck. She was complaining of pain. He prescribed physical therapy which she did for a short time. She was seen again, still complaining of pain. He saw her on October 4 and October 13, when she was complaining of pain to the spine and the thoracic area. He found new pains in different parts of the body. He could find no spasm or redness. He continued her on physical therapy but she did not return. Her bill was $437 and he submits a bill for $150 for various copies of visits, plus $26 for other things, *311 for a total of $613, plus the expert witness fee, which the Court fixed at the trial, which will be allowed.
Concerning the general damages, it should be mentioned that Mrs. Touchet and Mrs. Neveu did see Dr. Pope, a chiropractor, on several occasions, and only saw Dr. Lee prior to the trial. Dr. Pope's chiropractic bills of $551 to Mrs. Touchet and $523 to Mrs. Neveu are allowed. Dr. Lee attempts to charge Mrs. Touchet $230 for her office visit, $200 for a court appearance, and he attempts to charge Mrs. Neveu $240 for an office visit and $200 for the court appearance. These charges are out of line and will not be allowed. He will be allowed $200 for each of the ladies.
This Court feels that Evelyn Touchet is entitled to an award of $3000 in general damages and Linda Neveu is entitled to an award or $5000 in general damages. The loss of wages claimed has not been sufficiently proven."

QUANTUM
Plaintiffs contend that the damage awards of the trial court are so low as to constitute an abuse of discretion. We disagree. The trier of fact is given great discretion in establishing awards for general damages. An abuse of discretion must be clearly demonstrated in the record before this determination will be disturbed on appeal. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). In determining whether the trial court has abused its discretion in determining the amount of the award, the appellate court must look first to the individual circumstances of the case before it and not to prior awards. Reck v. Stevens, 373 So.2d 498 (La.1979).
After carefully examining the record and the trial court's analysis of the testimony, we cannot say that the trial court abused its great discretion in not awarding damages to Angelo Neveu. Nor can we say that the awards to Evelyn Touchet and Linda Neveu were so low as to be an abuse of the trial court's great discretion in setting general damages. The injuries in this case were not severe, and the trial court's superior judgment in light of its ability to observe the witnesses and determine their actual condition should be respected.

INSURANCE COVERAGE
Defendant, National, contends that the trial court erred in finding that the policy issued by Allstate did not provide coverage for this accident. At issue is the ownership of the 1975 Datsun B-210 automobile which was being driven by Guidry, a Texas resident, at the time of the accident. This vehicle was registered in the State of Texas to Guidry's sister, Cynthia Goodman, also a Texas resident. At the time, she had three vehicles insured by Allstate including the Datsun.[2] National argues that Allstate failed to carry its burden of proving that a valid transfer of ownership occurred between the parties under Texas law prior to the accident. Thus, National contends that absent a showing that Mrs. Goodman, the registered title holder of the Datsun, was not its owner, Allstate should not be permitted to deny coverage on the vehicle.
We do not find any merit in National's contentions. The evidence is strong and convincing that Mrs. Goodman made a manual donation of the Datsun to her brother in the spring of 1981, some eighteen months prior to the accident of September 7, 1982. Her testimony at trial clearly reveals her intent to donate the automobile.
"Q: Cynthia, a year prior to this accident back in the summer or the spring when you transferred possession of this vehicle to your brother, was it your intention at that time to transfer to him in order to make him a full owner?
A: Yes, sir.
Q: Okay. Now we discussed these documents. How many documents did you *312 sign in an effort to transfer the title on paper?
A: Two (2).
Q: Okay. One of them was a title?
A: Yes, sir.
Q: Okay.
A: And notarized.
Q: And over and above signing it, you got a notary to....
A: Yes, sir.
Q: Okay. And then the second document was what? If you know?
A: I explained to the lawyers what it looked like and they called it an act of transfer."
Mrs. Goodman further testified that after she gave the Datsun to her brother in the spring of 1981, she never exercised any control of the vehicle and never rode in it. In fact, her brother installed a motor in the car without her knowledge and for which she never paid. James Guidry also testified that he thought that he owned the vehicle and that his sister had nothing to do with its operation or maintenance after he took possession.[3]
National, however, maintains that as the formal transfer of title to comply with the Texas Certificate of Title Act was not completed prior to the accident, plaintiffs are afforded coverage under the Allstate policy. At the outset, we note that Louisiana appellate courts are not required to and do not ordinarily take notice of the law of another state except when that state's law is brought to the court's attention by the record or briefs. Cambre v. St. Paul Fire and Marine Insurance Co., 331 So.2d 585 (La.App. 1st Cir.), writ denied, 334 So.2d 434, 435 (La.1976).[4] In the instant case, both National and Allstate agree that Texas law should be applied to determine the contractual liability of Allstate. These parties, in brief, supplied this court with relevant Texas case law and statutory material. We agree that under the facts of this case (i.e., where the insurance contract was passed and executed in Texas to a Texas resident to insure an automobile registered in Texas), Texas law is applicable under LSA-C.C. art. 10.[5] Our study of Texas law also persuades us that a different result will not occur depending on whether Texas or Louisiana law is applied to the facts of this case.
We have examined several Texas cases factually similar to the case at bar where insurance owned by the transferor did not cover the actions of the transferee. We are persuaded that under Texas law, the failure to comply with the statutory requirements of the Texas Certificate of Title Act relating to the transfer of title to a motor vehicle does not automatically render the transfer void as between the parties. Gulf Insurance Company v. Minnie O. Bobo, 595 S.W.2d 847 (Tex.Sup.Ct.1980); Betty Jo Johnson et al, v. Safeco Insurance Company, 464 S.W.2d 164 (Tex.Civ. App.1971); Truck Insurance Exchange v. H.H. Schuenemann, Administrator, et al., 391 S.W.2d 130 (Tex.Civ.App. 1965). This jurisprudential rule has been applied to cases involving gifts. Truck Insurance Exchange v. H.H. Schuenemann, supra. Thus, where there is no dispute between rival claimants of an interest in the automobile in question, the administrative presumption arising from the certificate of title may be overcome by evidence showing ownership. Gulf Insurance Company v. Minnie O. Bobo, supra; Betty Jo Johnson, et al v. Safeco Insurance Company, supra; *313 Truck Insurance Exchange v. H.H. Schuenemann, Administrator, et al., supra.
Similarly, under Louisiana law, title to motor vehicles, though imperfect, may be transferred between the parties in accordance with the provisions of the Civil Code even though they have not complied with the Vehicle Certificate of Title Law (LSA-R.S. 32:701 et seq.); Scott v. Continental Ins. Co., 259 So.2d 391 (La.App. 2d Cir.1972); Luke v. Theriot, 195 So.2d 685 (La.App. 1st Cir.1967). The registration of sales of motor vehicles under the Vehicle Certificate of Title Law is an administrative proceeding which does not bear any essential relationship to transfer of motor vehicles under the provisions of the Civil Code. Scott v. Continental Ins. Co., supra. Under the provisions of LSA-C.C. art. 1539, the manual gift of a corporeal movable accompanied by real delivery is not subject to any formality.[6]Morris v. National Dairy Products Corporation, 160 So.2d 371 (La.App. 4th Cir.1964). Furthermore, since insurance is a personal contract between the insurer and the named insured and on behalf of others specifically provided for, coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties. Scott v. Continental Ins. Co., supra; McKenzie and Johnson, Civil Law Treatise: Insurance Law and Practice; § 60 (1986).
Thus, we conclude that under both the laws of Texas and of Louisiana, the verbal donation of the car by Goodman to Guidry was an effective transfer of ownership as between the parties even though the appropriate documentation was not forwarded to the State of Texas.[7] Accordingly, the trial court did not err in concluding that in light of that transfer of ownership there was no coverage available to Guidry under the terms of the Allstate policy.

MOTION TO DISMISS
National also argues that the trial court erred by not granting its motion to dismiss at the close of plaintiff's evidence. We disagree.
LSA-C.C.P. art. 1810B [now LSA C.C.P. art. 1672(B) ][8] states:
"B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence."
This article states that the trial judge may choose not to determine the facts on a motion for dismissal but may choose to "decline to render any judgment until the close of all the evidence."
In the instant case, after the close of plaintiff's evidence, National made a motion to dismiss on the grounds that its insurance policy, produced in response to plaintiffs' subpoena duces tecum, had not been introduced into evidence. Rather then ruling on the motion at that time, the trial judge took all motions under advisement. At the conclusion of the case, the trial judge ordered National to file its insurance policy into evidence. Clearly, under the facts of this case, it was well within the discretion of the trial court to admit the policy of insurance into evidence and a substantial injustice would have resulted if it were not admitted.
*314 For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to both plaintiffs and National.
AFFIRMED.
NOTES
[1] Linda Neveu was substituted as tutrix for the minor, Angelo, following the death of her husband.
[2] We note that although Allstate collected premiums from Mrs. Goodman after Guidry acquired possession of the vehicle, it had no knowledge of the transfer until after the accident.
[3] We are aware of and reject National's argument to the effect that Cynthia Goodman, by maintaining her insurance on the automobile, demonstrated her intent not to transfer ownership until a later date. While the act of maintaining insurance on a vehicle is a factor which may be considered in determining ownership, it is not determinative of ownership. Adams v. Security Insurance Company of Hartford, 533 So.2d 140 (La.App. 1 Cir.1988), aff'd in part, rev'd in part, 543 So.2d 480 (La.1989).
[4] We note that the trial court found that the Allstate policy did not cover this accident under either Texas or Louisiana law.
[5] LSA-C.C. art. 10 (1870), [now LSA-C.C. art. 15] as amended, provides in pertinent part as follows:

"The form and effect of public and private written instruments are governed by the laws and usages of the place where they are passed or executed."
[6] The burden of proving that a donation was made rests on the party alleging the donation, who, by "strong and convincing proof," must establish that the donor intended to donate and that delivery actually took place. Pardue v. Turnage, 383 So.2d 804 (La.App. 1st Cir.1980).
[7] National cites a Louisiana case Dugas v. Rogers, 285 So.2d 876 (La.App. 1st Cir.1973), in support of its contention that there was not a valid transfer of ownership. We find this case inapplicable to the facts of this case.
[8] Transferred by Acts 1983 No. 534 from the Jury Trials Section.