DORIAN M. BENNETT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bennett v. Commissioner
Docket No. 7442-88
United States Tax Court
T.C. Memo 1991-604; 1991 Tax Ct. Memo LEXIS 651; 62 T.C.M. (CCH) 1400; T.C.M. (RIA) 91604; December 9, 1991, Filed *651 Decision will be entered under Rule 155. Paul Waldman, for the petitioner. Scott Welch, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In a notice of deficiency dated January 25, 1988, respondent determined deficiencies in, additions to tax, and increased interest in petitioner's Federal income taxes as follows: Addition to tax plus increased
Taxable
interest under sections [1]
year
Deficiency
6659(a)
6621(c)
1981
$ 4,766
$ 602
*
1982
1,191
357
*
1983
1,323
397
*
After concessions, the issues remaining for decision are: (1) Whether petitioner donated a piano to the College of William and Mary in 1982 and, if so, the value of the donation; (2) whether petitioner donated *652 $ 4,300 to the college in 1983 in the form of restorations made to the piano; (3) whether petitioner is liable for valuation overstatements under section 6659(a) in 1982 and 1983; (4) whether petitioner is liable for increased interest under section 6621(c) in 1982 and 1983; and (5) whether petitioner is liable for additions to tax for substantial understatements under section 6661 in 1982 and 1983. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner, Dorian M. Bennett, resided in New Orleans when he filed the petition in this case. He filed income tax returns for the years 1981, 1982, and 1983 with the Internal Revenue Service Center in Austin, Texas. On September 7, 1978, petitioner purchased for $ 8,200 a piano, a piano stool, and a telegram from Glen Guidroz of Antiques Unlimited of New Orleans. The piano which was manufactured by the Erard Piano Company of London in the nineteenth century, has a burled walnut exterior and bears the hand written inscription "I. J. Paderewski. London. December - 1893." The piano also bears the notation "Patent Erard *653 London" and the serial number 18336. The telegram which was purchased by petitioner with the piano is dated June 24, 1897, and reads as follows: "I deeply regret that urgent telegram obliges me to leave this morning for Paris and prevents my calling today. Hope to come my next visit. Kindest regards, Paderewski." The telegram is addressed to a Mrs. Bryer, High Field Road Avenue, Crouch End, who was a music teacher during the 1890s in North London, and who was purportedly the original owner of the piano. She was also an acquaintance of Paderewski who visited her on trips to London. Ignace Jan Paderewski was a well-known composer and pianist in the late nineteenth century. He was also a Polish patriot and made substantial contributions to the independence of Poland after World War I. He was Poland's Premier and Minister of Foreign Affairs in 1919. He is known to have inscribed other pianos in a manner similar to the inscription in this case. One such piano is a Steinway in the Smithsonian Museum in Washington, D.C.
An accurate chain of the ownership of the subject piano prior to 1969 cannot be determined from the record before us. However, in 1969, it was bought by Paul Corin, *654 the owner of a museum in England, purportedly from the descendants of Mrs. Bryer, for 140 English pounds. In 1974, he sold it for 800 pounds to Glen Guidroz. Petitioner, who already owned a number of antiques, bought the piano from Mr. Guidroz because of its history and beauty as well as the quality of its sound. He also believed that Paderewski may have owned it but such ownership does not appear from the record. With the exception of a short period in 1983 when the piano was being restored by a New Orleans firm, the piano was kept by petitioner in his home in New Orleans until it was delivered to the College of William and Mary on April 12, 1985. While in his home, the piano was displayed, used, and enjoyed by petitioner and his friends. Prior to October 27, 1982, petitioner contacted Robert S. Dutro, the director of estate planning and the legal counsel to the endowment association of the College of William and Mary. At that time, Mr. Dutro was responsible for all gifts to the college of personal property such as antiques and objects of art. When approached by petitioner about a possible gift of the piano to the college, Mr. Dutro, after consultation with the individuals *655 in charge of property management for the college, told petitioner that the college "wanted to delay the transfer of the instrument to William and Mary until there was a proper place for it" which would probably not be until the conclusion of certain renovations which were then in progress at the college. As a result, it was agreed that petitioner would keep the piano insured and at a safe place in New Orleans until a proper place was found for it at the college. On October 27, 1982, petitioner executed with respect to the piano a document entitled Deed of Gift of Entire Interest (deed of gift). The deed of gift was signed by the president of the college on November 4, 1982. The deed of gift reads as follows: WHEREAS, Major Bennett of New Orleans, Louisiana is the owner of the following described property: Description
Erard Touring Grand Piano, Circa 1830 7 1/2 feet long of burled walnut
and, WHEREAS, Major Bennett desires to make an unrestricted gift of said property to the College of William and Mary in Virginia. NOW, THEREFORE, the undersigned does give, grant, convey and confirm unto the College of William and Mary in Virginia all of his right, title and *656 interest in and to said property, absolutely and forever. IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal this 27th day of October, 1982. /s/ Major Bennett DONOR 826 Frenchmen St. New Orleans, La. 70116 ADDRESS
The above described gift is accepted by me on behalf of the College of William and Mary in Virginia on this 4th day of November, 1982. /s/Thos. A. Graves PRESIDENT
On the same date he executed the deed of gift, petitioner also executed an Agreement for Outgoing Loan under the terms of which the piano was purportedly loaned by the college to petitioner for the period from September 1, 1982, to August 31, 1987. During such period, petitioner was to handle the piano with due care and keep it insured to the value of $ 35,000. Under the agreement, the college had the right to "recall" the piano "on short notice if necessary." From February 8, 1979, through March 22, 1985, the piano was insured by petitioner at a total cost of $ 1,790. The initial insured amount of $ 10,500 was increased by petitioner to $ 35,000 on September 25, 1981, and to $ 50,000 on November 21, 1983. Petitioner was the only assured under the policy until *657 November 10, 1983, at which time the policy was amended by an endorsement to include as assureds both petitioner and the college "as their respective interests may appear." On his income tax return for 1982, petitioner claimed a charitable contribution deduction of $ 34,000 with respect to the piano. The deduction reflected a fair market value for the piano of $ 50,000 and a basis of $ 10,000. The amount of $ 50,000 as the fair market value was based by petitioner upon separate appraisal reports by Mr. Guidroz dated November 11, 1982, and by Nanette K. Shapiro of Royal Antiques of New Orleans dated December 5, 1982. With the exception of the dates, the letterheads, and signatures, the two appraisal reports are identical in all respects. By letter dated June 17, 1983, petitioner forwarded to Mr. Dutro a copy of a proposal for restoring the piano. He had obtained the proposal from Stringed Keyboard Instruments of New Orleans. In the letter, petitioner suggested that he "pay for the repair work in total in the form of a donation to the college." By letter dated July 23, 1983, the Chairman of the Department of Music, College of William and Mary, replied as follows: Yes, I would *658 say the proposal * * * presented regarding the restoration of the instrument sounds very fine. We do recommend that you proceed with it at no cost to the college * * *. * * * Hopefully some day we shall have a building worthy of the instrument.
The proposed restoration was performed by Stringed Keyboard Instruments at a cost of $ 4,300 which amount was paid by petitioner in November of 1983. On his income tax return for 1983, petitioner claimed a deduction for contributions made to William and Mary totaling $ 4,580 which included the $ 4,300 he paid for the restoration of the piano. On January 25, 1985, Ms. B. Vileisis of respondents' Art Valuation Group contacted Mr. Dutro for the purpose of arranging for an inspection of the piano at the college by respondent's expert. Ms. Vileisis was advised that the piano had not been delivered to the college due to lack of a suitable space for its exhibition. However, by letter dated January 28, 1985, Mr. Dutro advised Ms. Vileisis that a suitable space had been located and the piano would be available for her inspection shortly. As stated before, the piano was delivered to the college on April 12, 1985, and placed in the Botetourt *659 Gallery of the Swem Library in a space which, from the record as a whole, appears to have been available in November 1982 and thereafter. In the notice of deficiency, which was mailed to petitioner on January 25, 1988, respondent determined a deficiency, additions to tax under section 6659(a) and increased interest under section 6621(c) with respect to petitioner's returns for each of the years 1981, 1982, and 1983. In his answer, which was filed on June 1, 1988, respondent increased the deficiencies, the additions to tax and the increased interest for 1981 and 1982. In an amendment to his answer, which was filed on January 31, 1990, respondent determined that the gift of the piano did not occur in 1982 and as a result asserted: (1) Further increases in the deficiencies for 1982 and 1983; (2) an addition to tax under section 6661(a) for 1982; and (3) increased interest for 1982 and 1983 under section 6621(c). On February 9, 1990, petitioner, as donor, executed a document entitled Act of Confirmation of Donation (act of confirmation). The document, which was executed for the College of William and Mary, as donee, on February 28, 1990, by Edward Q. Allenby, Vice-president for University *660 Advancement, reads in pertinent part as follows: Donor declared that on October 27, 1982, by execution of a document captioned "Deed of Gift of Entire Interest" (hereafter the "Deed of Gift"), a copy of which is attached hereto and made a part hereof, he intended to donate to Donee his entire right, title and interest in and to the following described property: One Erard Touring Grand Piano, Circa 1830, 7 1/2 feet long of burled walnut.
Donor further declared that pursuant to Louisiana Civil Code Article 1845, he hereby confirms the donation set forth in the Deed of Gift and, to the extent required by said Louisiana Civil Code Article 1845, he hereby restates his donation as follows: Donor does hereby irrevocably donate unto Donee all of his right, title and interest in and to the following described property: One Erard Touring Grand Piano Circa 1830, 7 1/2 feet long of burled walnut.
Donor further declared that it is his intent, pursuant to Louisiana Civil Code Article 1845, that all civil and legal effects of this Act of Confirmation of Donation be made retroactive to the date of his execution of the Deed of Gift. Donee declared that its duly authorized representative *661 executed the Deed of Gift on November 14, 1982, with the intent of accepting the aforesaid intended donation of Donor. Donee further declared that it hereby accepts the aforesaid donation of Donor as confirmed by Donor herein and that it is its intent that this acceptance be made retroactive to the date of execution of the Deed of Gift. THUS DONE AND PASSED, on the date first above written, in the presence of the undersigned competent witnesses, who sign their names with the appearers and me, Notary.
The document was executed in accordance with Louisiana law by each signatory in the presence of a notary and two witnesses. At trial, the parties disposed of the entire controversy with respect to 1981 by stipulation. OPINION (1) Donation of Piano
Since the question of whether the donation of the piano was completed in 1982 was not raised in the notice of deficiency but in an amendment to respondent's answer, it is a new matter on which respondent has the burden of proof. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881 (1981). Respondent contends that the contribution of the piano was not completed in 1982 because (1) under Louisiana law real delivery *662 was not accomplished during the year since petitioner retained possession of the piano and continued to use and enjoy it; (2) the deed of gift executed by petitioner in 1982 failed under Louisiana law to transfer title to the college; and (3) the confirmation of donation executed by petitioner in 1990 does not have retroactive effect for income tax purposes. Section 170 provides that a deductible charitable contribution is a gift made during the taxable year to or for the use of an organization described in section 170(c) which includes institutions such as William and Mary. To constitute a deductible charitable contribution the following elements must be present: (1) A donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of *663 the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee; * * *
Goldstein v. Commissioner, 89 T.C. 535, 541-542 (1987); Guest v. Commissioner, 77 T.C. 9 (1981); Weil v. Commissioner, 31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936), cert. denied 299 U.S. 552, 81 L. Ed. 406, 57 S. Ct. 14 (1936). Respondent concedes that the first and second elements of a gift were met in this case. He contends, however, that the remaining requirements, and particularly element (5), or delivery, were not met in 1982. Petitioner agrees that State law is used to determine whether an item of personal property which is the subject of a charitable contribution has been delivered within the taxable year. See Greer v. Commissioner, 70 T.C. 294 (1978), affd. 634 F.2d 1044 (6th Cir. 1980). He contends, however, that Virginia law and not Louisiana law is applicable in this case. In support of his contention, petitioner relies on a Louisiana choice of law statute that provides: The form and effect of public and private *664 written instruments are governed by the laws and usages of the places where they are passed or executed. But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
La. Civ. Code Ann. art. 10 (West 1952) (current version at La. Civ. Code Ann. art. 15 (West 1991)). Essentially, petitioner contends that the deed of gift which he admittedly executed in Louisiana would "have effect" in Virginia, and therefore Virginia's law must control in determining whether delivery of the piano was completed in 1982. We disagree because the interpretation of article 10 of the Louisiana Civil Code by the Louisiana courts in analogous cases does not support petitioner's contention. In Touchet v. Guidry, 550 So. 2d 308 (La. Ct. App. 1989), the Louisiana Court of Appeals concluded that Texas law determined an automobile insurer's liability with respect to an accident involving the insured automobile which occurred in Louisiana since the insurance contract was executed in Texas by a Texas resident and the automobile was registered in Texas. In its decision, the Louisiana court stated *665 that under article 10 of the Civil Code the effect of the insurance contract was governed by the law of the place where the contract was executed. In the case before us, petitioner was a Louisiana resident when he undertook in 1982 the execution of the deed of gift in Louisiana, in 1982 the piano was located in Louisiana, and it remained and was insured there until 1985. Therefore, the deed of gift was intended to have effect in Louisiana, and Louisiana law must be applied to determine whether a gift occurred in 1982. Touchet v. Guidry, supra.See also Hanover Petroleum Corp. v. Tenneco Inc., 521 So. 2d 1234 (La. Ct. App. 1988); Shaw v. Ferguson, 437 So. 2d 319 (La. Ct. App. 1983); Ark-La-Tex Timber Co. v. Georgia Cas. & Sur. Co., 516 So. 2d 1217 (La. Ct. App. 1987). Under Louisiana law a gift inter vivos of personal property may be accomplished by a written instrument or by "real delivery." La. Civ. Code Ann. arts. 1536, 1538, 1539 (West 1987). Real delivery requires the transfer of actual possession of the property. Ruch v. Commissioner, 718 F.2d 719 (5th Cir. 1983) (quoting *666 Succession of Gorman, 209 La. 1092, 26 So. 2d 150 (1946)); See also, Bergeron v. Bergeron, 411 So. 2d 1183 (La. Ct. App. 1982). Since the college did not take actual possession of the piano until 1985, it is apparent that real delivery under article 1539 of the Louisiana Civil Code did not occur in 1982. While tangible personal property normally must be physically delivered to complete a gift, the delivery of a deed to the donee may substitute for delivery of the gift where actual delivery is inconvenient or impracticable. Mellon v. Commissioner, 36 B.T.A. 977, 1065 (1937). Assuming that actual delivery in this case was inconvenient or impractical in 1982, we must determine whether the deed given to the college was valid under Louisiana law. In the absence of real delivery, Louisiana requires that an inter vivos gift of movable property be represented by a writing executed before a notary public and two witnesses. La. Civ. Code Ann. arts. 1536, 1538 (West 1987). The writing must meet the strict form requirements. Bergeron v. Bergeron, 411 So. 2d 1183, 1186 (1982)(citing La. Civ. Code Ann. *667 art. 1467). The deed of gift before us does not meet such requirements. It does not bear the seal nor the signature of a notary public or the signature of any witness. Thus, the deed of gift does not conform to Louisiana law and did not pass title to the piano in 1982. Notwithstanding the invalidity of the deed of gift, petitioner contends that the confirmation of donation executed by petitioner on February 9, 1990, retroactively cured any defect in the deed of gift and effectively transferred the piano to the college in 1982. In this connection, petitioner relies on articles 1844 and 1845 of the Louisiana Code which provide that a donation inter vivos that is null for lack of proper form may be subsequently confirmed by the donor, and such confirmation is effective retroactively to the date of the invalid donation. La. Civ. Code Ann. arts. 1844 and 1845 (West 1987). However, in spite of the retroactive effect of a confirmation for State law purposes, the Federal income tax law operates on the basis of annual accounting periods. Thus, items of income and deductions must be determined each year from the events that occur during such year. In other words, the tax year concept *668 of the Federal income tax does not permit retroactive adjustments. Although they may throw light upon facts in existence during a tax year, subsequent events cannot be used to change the tax consequences of an action taken in an earlier year. Noble v. Commissioner, 368 F.2d 439 (9th Cir. 1966), affg. a Memorandum Opinion of this Court; Sterling Distributors, Inc. v. United States, 313 F.2d 803, 807 (5th Cir. 1963). Therefore, since petitioner failed in 1982 to execute a valid deed of gift or to effect real delivery of the piano to the college and continued to possess, use, and enjoy it until 1985, no gift of the piano to the college occurred in 1982. Thus, the confirmation in 1990 has no retroactive effect for income tax purposes. Our conclusion remains the same even though the facts set forth in our findings clearly demonstrate that petitioner stood ready to complete the gift at the college's request. A promise or expectancy to make a contribution at some point in the future is not sufficient to support a deduction under section 170. Petitioner's reliance on Dodge v. United States, 413 F.2d 1239 (5th Cir. 1969), for *669 the proposition that respondent is bound by an act of correction is also misplaced because in Dodge the court did not decide the retroactive effect in the taxable year of a reformation agreement executed in a subsequent year. Dodge v. Commissioner, supra at 1243. Winokur v. Commissioner, 90 T.C. 733 (1988), cited by petitioner for the proposition that a charitable contribution can be completed despite the donee's lack of physical possession of the subject of the donation is factually inapposite. Winokur v. Commissioner stands for the proposition that where, unlike here, an undivided partial interest in personal property is the subject of a deed of gift, the right to possession is sufficient. Furthermore, in Winokur the validity of the deed was not in question. Other cases cited by petitioner are also inapposite because the applicable State law did not require actual delivery ( Sandler v. Commissioner, T.C. Memo 1986-451), or the questioned gift was considered complete when an item of personal property was delivered to an agent of the donee ( Murphy v. Commissioner, T.C. Memo 1991-276). In the case *670 before us, petitioner has not cited any authority that allows a charitable contribution deduction where the donor retained actual possession, dominion, and control over the subject of the purported gift, and valid title was not transferred to the donee during the taxable year. We conclude, therefore, that petitioner is not entitled to a charitable deduction with respect to the piano in 1982. (2) Restoration Expenditures
As a result of our conclusion with respect to the piano, the restoration expenditures paid by petitioner in 1983 are not deductible under section 170 as contributions made to the college. (3) Additions to Tax Under Section 6659(a)
Under section 6659(a) an addition to tax is imposed for an underpayment of tax attributable to a valuation overstatement. However, where as here, a taxpayer claims a deduction and when the disallowance of same is not attributable to a valuation overstatement, the addition to tax under section 6659 is not applicable. Todd v. Commissioner, 862 F.2d 540 (5th Cir. 1988), affg. 89 T.C. 912 (1987); McCrary v. Commissioner, 92 T.C. 827, 851-855 (1989). Therefore, the additions *671 under section 6659(a) are not sustained in this case. See Suna v. Commissioner, T.C. Memo 1988-541. (4) Increased Interest Under Section 6621(c)
Section 6621(c) provides that the rate of interest on a substantial underpayment of tax attributable to a tax-motivated transaction is 120 percent of the usual rate of interest. A tax-motivated transaction includes any valuation overstatement within the meaning of section 6659(a). Sec. 6621(c)(3)(A). Since we have found no underpayment in this case which is attributable to a valuation overstatement, the increased interest rate under section 6621(c) is not applicable. (5) Addition to Tax Under Section 6661
Since respondent asserted for the first time an addition to tax under section 6661 in an amendment to his answer, he has the burden of proof with respect to this issue. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881 (1981); Reiff v. Commissioner, 77 T.C. 1169, 1173 (1981). Section 6661 imposes an addition to tax equal to 25 percent of any underpayment of tax attributable to a substantial understatement. An understatement is substantial if it exceeds the greater *672 of 10 percent of the amount of tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement may be reduced in two ways: (1) The portion of the understatement attributable to the taxpayer's tax treatment of any item for which there is substantial authority for such treatment; and (2) the amount of any item if the relevant facts affecting the item's treatment were adequately disclosed on the return or in a statement attached to the return. Secs. 6661(b)(2)(B)(i) and (ii). Respondent contends that there was neither substantial authority for petitioner's charitable contribution deduction with respect to the piano nor adequate disclosure of the relevant facts affecting the item's treatment. As previously indicated, petitioner has not produced any authority for the allowance of a charitable deduction where, as here, the taxpayer retains possession, title, dominion, and control over the personal property which was the subject of the alleged donation. Consequently, substantial authority for petitioner's treatment of this item is not present in this case. Notwithstanding the lack of such authority, adequate disclosure on or with a return of the relevant *673 facts affecting an item's treatment will reduce an understatement. Sec. 6661(b)(2)(B)(ii). "Disclosure is adequate if the taxpayer discloses facts sufficient to enable the Internal Revenue Service to identify the potential controversy, if it analyzed that information." Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1982). Petitioner's 1982 return contained a worksheet detailing his computation of the deduction, a copy of the deed of gift, and an appraisal of the piano signed by Glen Guidroz. However, the return did not contain a copy of the agreement which purportedly loaned the piano to petitioner which would have revealed its continued possession by petitioner. This omission made it impossible for respondent to identify the potential controversy. Therefore, there was not adequate disclosure under section 6661. Petitioner argues that respondent should waive the addition to tax because he acted reasonably and in good faith within the meaning of section 6661(c). At trial, petitioner introduced sufficient evidence to support a finding that he relied in good faith on *674 appraisers in determining the fair market value of the piano. However, the record does not contain sufficient evidence to sustain a finding that he was acting in good faith when his return was filed without a disclosure of his continued possession of the piano. In the absence of this disclosure and the lack of authority to support a finding that the donation was completed in 1982, we conclude that the addition under section 6661 is applicable and respondent did not abuse his discretion by refusing to waive the addition. Thus, if a computation under Rule 155 reveals a substantial understatement under section 6661(b)(1)(A), the addition is sustained. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise specified, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 120% of the adjusted rate of interest ↩