759 So.2d 836 (2000)
STATE of Louisiana
v.
Pam RABALAIS, Defendant-Appellant.
No. CR99-623.
Court of Appeal of Louisiana, Third Circuit.
January 26, 2000.
*837 J. Eddie Knoll, District Attorney, Marksville, LA, for State of Louisiana.
Angelo Piazza, III, Marksville, LA, for Defendant/Appellant.
BEFORE: COOKS, PETERS and PICKETT, Judges.
COOKS, Judge.
Pam Rabalais and Jason Rabalais met and lived together for a while without formality. Pam testified she received "[$18,500] in a lump-sum payment" from a job following a "leave of absence." The couple used the funds to buy a trailer and "some land" and "did a lot of improvement on the land." All the property, however, was purchased in Jason's name shortly before the couple married on June 15, 1996.
Throughout the couples' brief marriage, Jason Rabalais physically abused his wife. He was arrested and jailed several times for beating Pam. Despite Jason's propensity for violence, Pam loved and continued to forgive him. We gather from the record that Jason was charged in January, 1997 with committing battery on his wife. Jason's repeated incarceration for fighting with his wife caused much friction between the couple's families and, in particular, between Pam and Steve Rabalais, Jason's father who admitted at trial he "did not like her." After the January incident, Pam feared "[Jason's] family was going to take everything ..." Reflecting, Pam testified: "it was partially my fault because I trusted him when I gave him the $18,500, this was a man I was going to marry and live my life with. I trusted him. I didn't feel at the time I needed paperwork done." While in jail Jason signed a power of attorney on February 21, 1997 giving his father full authority to act in his stead.
When Jason was released from jail, the couple "got back together" this angered both families and "created a lot of problems." According to Pam, Jason was remorseful for the problems he caused and desiring to "do right by her," he agreed to share ownership of the property he owned separately and acquired when they were together but was listed solely in his name. The record contains an "Act of Donation" purportedly bearing the signature of Jason Rabalais and reciting in pertinent part:
I, Jason Anthony Rabalais ... [m]arried to Pamela Bordelon Rabalais ... [agree] to donate ½ interest and ownership of the said property as listed below to Pamela Bordelon Rabalais.... married to and living with Jason Anthony Rabalais.
Property as follows:
A certain lot or parcel of land together with all building and improvements consisting of 4.53 acres, address known as 230 Mike Cooper Ln.
1983 King Mobile Home, Vin # KCA837430997, LIC# A188027, Purchased 6/3/96
1993 Chev 6000 6K, White, Vin # 1GCS14K4P8181718, LIC# S656726, Purchased 12-14-94

*838 1987 Chev RCN (Blazer), Red/wht, Vin# 1GNCT18R4H8131322, Purchased 3-21-96
Honda ATC 250 ES, Vin # JH3TEo4XHM303447, Purchased 4-14-94
This Agreement becomes effective March 1, 1997.
In Proper Person:
[Signature] Jason Rabalais
* * *
I, Pamela Bordelon Rabalais, [agree] to accept ½ [o]wnership of the said property, in lieu of the sum $18,000.00, loaned to Jason Anthony Rabalais, June 1996. In the event of a sale of above mentioned property, Jason Anthony Rabalais will divide ½ profit to Pamela Rabalais.
Pamela Bordelon Rabalais
[Signature]
Steve Rabalais testified at trial he purchased the Chevy S-10 truck listed in the Act of Donation for his son before the couple met and he considered that all the property Jason owned before he met Pam remained his separate property.
In June, 1997, Jason beat Pam again, severely injuring her. He was charged with committing rape and aggravated battery. On September 14, 1997 Jason drove to court in the Chevy S-10 pickup to answer the charges against him. After the charges were amended, he pled guilty to committing second degree battery on Pam and was promptly sentenced to serve three years at hard labor with the Department of Corrections. Steve Rabalais' sister-in-law drove the truck to his home that day. A few weeks later, Steve Rabalais testified Pam "asked to use it" and he acceded to her request. But when he requested that she return the truck, Steve Rabalais on direct examination by the State related: "she [said] no. My attorneys informed me..." The State did not allow him to complete the sentence, but we gather from the record Pam expressed to him her belief that she had a right to keep the truck.[1] After "several days" passed, Steve Rabalais telephoned Pam again and again she refused to return the truck. On November 24, 1997, Steve "went to the Louisiana Motor Vehicle Bureau in Bunkie and [he] brought a power of attorney which [he] had from Jason.... and he switched the title [for the Chevy S-10 pickup] from Jason's name to [his] name." The next day, Jason signed a "REVOCATION OF POWER OF ATTORNEY" which recites in pertinent part: "I, Jason Anthony Rabalais... effective this date, [revoking] Steven Rabalais of all Powers of Attorney filed February 21, 1997, booking page 435, entry # 97-01219, Avoyelles parish Clerk of Court, Marksville, La...." When Pam drove the truck to the Avoyelle's Parish Detention Center in Bunkie to visit Jason a week later, Steve Rabalais (with a new certificate of title in hand) arrived at the Sheriff's office and requested assistance in retrieving the truck from Pam's possession. Two deputies approached Pam and directed her to give them the keys to the truck. When she complied, they proceeded to an area outside the Center where Steve Rabalais was waiting and handed him the keys to the truck. Steve drove the truck to his home and parked it in a shed enclosed behind his "tractors ... equipment ... highboy and all that, where you couldn't see it."
*839 On December 5, 1997, Steve returned to the jail and obtained a second power of attorney from his son. In a taped statement recorded on March 3, 1998, detailing the events which prompted him to secure a second power of attorney from his son, he related:
... we had a power of attorney fixed by Charles Riddle ... I think in February of 97. I think that is the approximate date ... Pam talked to Jason into removing that power of attorney into ... deleting it and canceling it or whatever, you know, okay when we found that out we talked to Jason, he said he had tricked her again. We put the power of attorney back. The second power of attorney worded the same as Charles[']... was put back in place at the prison with uh a Miss Georgia Gremillion as the notary. So she signed the second power of attorney. That second power of attorney which is identical accept [sic]... except for the dates. That power of attorney is identical to the one Charles Riddle set up and that would be the power of attorney that I used to take my truck back and put in my name.(Emphasis added)
Steve left the truck parked in the shed for two months until he decided it was safe to place it on a "little parking pad" in the "front corner of [his] yard." On February 24, 1998, he was awakened by a telephone call from an Avoyelles Parish Sheriff officer who told him he "[needed] to go to the Cottonport Police Department, that [his] truck was stolen and [he] need[ed] to go over there to see about it."
What happened on the night the truck was taken from Steve Rabalais' yard and who took it are questions to which the State and defense attempted to provide different answers for the jury at trial. The State told the jury Pam devised a scheme to take the truck from Steve's house; she solicited the assistance of two accomplices; and in the dead of night, she and the two conspirators went to Steve's house, stole the truck, removed the CD player, radio and other equipment from it, and left it about 4 miles off the main roadway where it was later discovered. The defense, on the other hand, told the jury Pam Rabalais did not plan to steal the truck from Steve Rabalais' yard and she did not participate in any way in removing it on the night in question. The alleged accomplices testified at trialone, corroborating the State's evidence, testified Pam planned the whole thing and was present when the truck was removed from Steve's yard; the other, corroborating the defense side, testified Pam knew nothing about the "plan" and did not participate in any way in taking the truck on the night of the offense.
It is undisputed the truck was removed from Steve Rabalais' yard during the night on February 24, 1998 and it was parked in a field after the bandits removed several items from it. At approximately 1:57 A.M., a deputy was traveling behind a vehicle operated by Clint Lachney, one of the admitted accomplishes. Clint explained when he noticed the deputy following him, he "started thinking well maybe they're coming out for these stolen goods," so he "didn't know what else to do but run." The officer gave chase and eventually stopped the vehicle. Only Clint and the items removed from the Chevy S-10 were discovered in the fleeing car. When Clint was arrested, he confessed "on the spot" and named as his accomplishes Pam Rabalais and Nicole Neumiller. He also told the officers where the truck had been abandoned. Pam and Nicole were arrested and the truck was returned to Steve Rabalais that morning.
Pam Rabalais was charged with committing theft of property over five hundred dollars, a violation of La.R.S. 14:67. After trial, the jury convicted her and she was sentenced to serve three years with the Department of Corrections. The sentence was suspended and she was placed on three years supervised probation, fined $1000, ordered to pay restitution, and to *840 comply with other special conditions.[2] Pam Rabalais lodged this appeal assigning several errors which she contends warrant reversal of her conviction and sentence. Finding the State's evidence was insufficient to convict Pam Rabalais of theft, we forgo addressing all the assignments she raised and the patent errors we discovered during our independent examination of the record.

LAW AND ANALYSIS
Theft is defined in La.R.S. 14:67 as follows:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representation. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
The Louisiana Supreme Court expressed in State v. Victor, 368 So.2d 711, 713 (La.1979), there are three essential elements of the crime of theft which must be proved by the prosecution beyond a reasonable doubt:
1. The "misappropriation or taking of anything of value which belongs to another,"
2. Either "without the consent of the other ... or by means of fraudulent conduct,"
3. With "intent to deprive the other permanently" of the object of the taking or misappropriation.
We noted in State v. Kinney, 431 So.2d 16,17 (La.App. 3 Cir.1983), "[w]hen a defendant contends that the State has failed to carry its burden of proof as to each element of a crime or that the evidence is insufficient to prove each element, appellate review is limited by the standard enunciated in Jackson v. Virginia, [443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).]" Applying that standard, we find the State has failed to prove two elements of the crime charged, the "misappropriation or taking of anything of value which belongs to another" and the "intent to deprive the other permanently" of the object of the taking or misappropriation.
The state simply did not prove beyond a reasonable doubt Pam Rabalais took property "belonging to another." Even assuming the evidence sufficiently established Pam removed the truck from Steve Rabalais' yard, the State nonetheless was required to prove the "thing of value" she took belonged to another.
The well-settled law of this State is that the rights of co-owners to the possession of property held in common are equal and co-extensive. Butler v. Hensley, 332 So.2d 315 (La.App. 4 Cir.1976). The Louisiana Supreme Court long ago recognized:
Co-owners are owners par mi et par tout, of part and of the whole. Neither of two co-owners has the exclusive right to any determinate part of the common property.
Thus the Court stated in Juneau v. Laborde, 82 So.2d 693, 696, 228 La. 410, 418 (1955), that the "right of co-owners to possession of the property being equal and coextensive, neither becomes indebted to the other for his personal occupancy and enjoyment, save, probably, that a co-owner, who has been deprived of the right of possession by reason of his co-owner's exclusive occupancy, may claim damages from the date upon which he has demanded occupancy and has been refused by the possessor." But even then, a co-owner who is dissatisfied with the use to which the property is being put has his remedy by injunction if the character is being changed or the assets wasted and to the remedy of a partition if he is dissatisfied with the occupancy or possession exercised by his co-owner. See Coon v. Miller, 175 So.2d 385 (La.App. 2 Cir.1965). The law *841 generally does not afford a criminal remedy for the taking of property held in common by one co-owner from another. Any contention that property so held in common "belonged to another" is insufficiently grounded vis a vis co-owners because each has the legal right to take and possess the object of the alleged theft.
In this case, Pam Rabalais testified she acquired an ownership interest in the object of the theft (the Chevy S-10 pickup) by virtue of an Act of Donation executed by her husband, Jason Rabalais, who was financially indebted to her for sums she loaned him prior to their marriage. She introduced as proof the document reproduced above, dated March 1, 1997, which bears Jason Rabalais' signature. The State, thus, could not satisfy its burden that "the thing of value belonged to another" by merely showing Steve Rabalais possessed a certificate of title from the Department of Motor Vehicle at the time of the alleged taking. In Samanie v. Samanie, 599 So.2d 514 (La.App. 4 Cir.), writ denied, 605 So.2d 1149 (La.1992), our brethren on the fourth circuit court of appeal correctly noted "[t]he registration of sales of motor vehicles under the Vehicle Certificate of title is an administrative proceeding which does not bear any essential relationship to transfer of motor vehicles under the provisions of the Civil Code." See also Scott v. Continental Ins. Co., 259 So.2d 391 (La.App. 2 Cir.1972). Thus, the courts have said Louisiana law recognizes that "title to motor vehicles may be transferred between the parties in accordance with the provisions of the Civil Code even though they have not complied with the Vehicle Certificate of Title Law...." Soileau v. Soileau, 664 So.2d 551, 552 (La.App. 3 Cir.1995); Touchet v. Guidry, 550 So.2d 308 (La.App. 3 Cir. 1989). Neither could the State satisfy its burden by establishing that the document offered as proof of the donation was not executed in compliance with all the formalities of law. Under the provisions of the Civil Code, the manual gift of a corporeal movable accompanied by real delivery is not subject to any formality. La.Civ. Code art. 1539; Samanie, 599 So.2d 514. Therefore, ownership between parties can change without a transfer of title. Soileau, 664 So.2d at 552; Samanie, 599 So.2d at 515.
The Act of Donation, albeit invalid to translate title to immovable property, evidenced Jason's intent to convey to his wife an interest in the truck to be held in "community." Further, the State offered no evidence to rebut Pam's testimony that she loaned Jason $18,500 and in payment of the loan he gave her equal interest in all the property listed separately in his name, including the Chevy S-10 pickup. Without instructions on what constitutes a valid "donation by manual gift," the jury understandably was ill-prepared to properly weigh the evidence. The burden to prove beyond a reasonable doubt the property belonged to "another" and not in any portion to Pam rests with the State. This burden it did not carry as a matter of law.
Moreover, the State was required to establish Pam intended to deprive the "other" permanently of the object taken. Proof that Pam took a vehicle registered in Steve Rabalais' name was not alone sufficient to overcome this burden. Kinney, 431 So.2d at 17. Pam, even if later proven wrong, reasonably believed she owned an interest in the truck. La. R.S. 14:16, entitled "Mistake of Fact," provides: "Unless there is a provision to the contrary in the definition of a crime, reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime." The father's admission that Jason told him he "tricked her again" is evidence that Jason lulled Pam into believing all the property she and he owned prior to and after the marriage belonged to them in community. By her own admission, she loved and trusted Jason too much. But her honest belief she owned an interest in the truck and reasonable ignorance of the *842 law on donations inter vivos precludes a finding that she intended to take the property of another.[3]

DECREE
For the foregoing reasons, we hereby reverse and set aside the conviction and sentence of Pam Rabalais.
REVERSED; CONVICTION AND SENTENCE SET ASIDE.
PETERS, J., concurs and assigns reasons.
PETERS, J., concurring.
I concur in the reversal of the conviction in this matter. In reaching the conclusion that the conviction should be reversed, I did not find it necessary to consider all of the matters found in the majority opinion. The decision to reverse can be based simply on the fact that the state failed to prove beyond a reasonable doubt an essential element of the offense of theftthe element of intent.
To convict one of the offense of theft, the state must prove beyond a reasonable doubt general criminal intent on the part of the perpetrator. La.R.S. 14:67; La.R.S. 14:11. Additionally, "[u]nless there is a provision to the contrary in the definition of a crime, reasonable ignorance of fact or mistake of fact which precludes the presence of any mental element required in that crime is a defense to any prosecution for that crime." La.R.S. 14:16.
It is not seriously disputed that Jason Rabalais executed the Act of Donation effective March 1, 1997, wherein he purported to transfer to the defendant a one-half interest in the vehicle which is the subject of the criminal charge in this matter. The validity of the donation is not important, because, even if one takes property under a mistaken but honest belief that it is his property, he cannot be found guilty of theft. State v. Miller, 154 La. 138, 97 So. 342 (1923).
Steven Rabalais attempted to circumvent the terms of the donation by the purported transfer of November 24, 1997. In the transfer, he was both mandatary and vendee and acquired the vehicle for the purported price of $2,000.00. Yet, at trial, he testified that he would take no less than $5,000.00 if he were to sell it. The power of attorney contains no provision authorizing this dual role, and Jason Rabalais did not testify to suggest that such authority existed. Had this transfer occurred after January 1, 1998, the effective date of the revision, amendment, and reenactment of Book III, Title XV, of the Louisiana Civil Code by Acts 1997, No. 261, § 1, it would have been an invalid transfer on its face. That legislation added to the Law of Mandate La.Civ.Code art. 2998 which states that "[a] mandatary who represents the principal as the other contracting party may not contract with himself unless he is authorized by the principal, or, in making such contract, he is merely fulfilling a duty to the principal." Thus, given the fact that Jason Rabalais did not testify concerning the full extent of his father's powers, even this transfer is suspect.
It appears simply that this dispute between Steven Rabalais and the defendant belongs in civil and not criminal court. As pointed out by the trial court, the relationship between the defendant and Jason Rabalais has become a "horrible tragedy" spawning "several victims" with the number *843 continuing to mount. Having personal knowledge of both families involved, the trial court noted that the events leading up to the current litigation "[are] definitely not befitting of their characters and their backgrounds," and that "the merry-goround involving [these families] is still turning." As the trial court cynically suggested, given the nature of all the problems facing the litigants, "books and movies should be in the works."
My review of the record causes me to agree with the trial court's assessment of the entire matter. In State v. Mussall, 523 So.2d 1305, 1309 (La.1988), the supreme court noted that the review required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) "involve[s] more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case." Applying the three-step process suggested in Mussall, I conclude that the litigation can be condensed into nothing more than a personal dispute which does not warrant a felony conviction, given the nature of the intent evidence presented. Therefore, I concur in the decision to reverse the conviction.
NOTES
[1] Steve Rabalais, in a taped statement given to an Avoyelles Parish Sheriff's detective on March 3, 1998 when referring to his telephone conversations with Pam, stated:

Well it was basically polite but she told me that she had checked with an attorney and uh that even though Jason was in prison he had to provide her with a vehicle whether it was theirs or not, community property or not and uh I disagreed but [I] been with this woman for the last year that I learned not to just get into an argument so I just left it alone and then uh I came over to the Avoyelles Parish Sheriff's Office and requested their help.
[2] Pam Rabalais had no prior convictions.
[3] Additionally, we note the truck was left a short distance from Steve Rabalais' home, in functional condition other than for the removal of its sound system. The intent to deprive must also be "permanent." Only the responsive offense of "unauthorized use" would have been appropriate in this instance even if the State had established the property "belonged to another." The State did not charge Pam Rabalais with committing criminal damage to property or theft of the sound system valued over $500.00. We note further an Avoyelles Parish grand jury later returned a "no true bill" against Pam Rabalais and her father stemming from Steve Rabalais' claim that the other items listed in the Act of Donation were subjects of a theft.