860 So.2d 232 (2003)
Veriniece J. CUNY
v.
Frank QUINN.
No. 03-CA-649.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 2003.
*233 Robert G. Harvey, Sr., Kelly A. Loisel, New Orleans, LA, for Plaintiff/Appellant.
Patricia S. LeBlanc, Nicole M. Tomba, Metairie, LA, and Sarah Ney Breazeale, Sachse & Wilson, L.L.P., New Orleans, LA, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Plaintiff/Appellant, Veriniece Cuny (Cuny), appeals the trial court's judgment finding in favor of defendant, Frankie Mae Quin (Quin), recognizing defendant's physical possession of a portion of the alleyway between their properties. We affirm.
This case concerns ownership of a portion of an alleyway in Bonnabel Place Subdivision. The ownership of the alleyways in Bonnabel Place Subdivision has long been the subject of litigation.[1] Plaintiff, *234 Cuny, owns two contiguous lots (the Cuny property) that front Veterans Highway near the intersection with Bonnabel Boulevard. Her parents bought the property in 1952, and sold it to her in 1978. It was vacant until 1980, when she leased it to Mighty Muffler, who built a muffler shop on the property and also enclosed it with a wooden fence, cutting off its access to the alleyway. Cuny's property backs up to a disputed portion of the alleyway, which runs down the side of defendant, Frankie Mae Quin's, property. Quin's parents bought their property in 1952, which fronts Bonnabel Boulevard. After their deaths, Frankie Mae Quin became full owner of the property, which is residential.
In 1994, Cuny responded to an advertisement in the Times Picayune from Bonnabel Properties, who offered to sell portions of the alleyways to adjacent property owners. On January 11, 1994, Cuny purported to purchase from Bonnabel Properties, for $2,496.00, the portion of the alleyway that ran behind her property and along side of the Quin property, a strip of land approximately 12 feet wide by 104 feet long, designated as alleyway 5A-5B-6A-6B. She recorded her purchase in the public records and presented evidence that she has paid taxes on the alleyway since the purchase.
This litigation arose in 1996 when Quin built a fence immediately behind the existing dilapidated fence first erected by Mighty Muffler in 1980. The original 1980 fence had the effect of separating the Cuny property from the alleyway and enclosing the alleyway, along one side, within the Quin property. Cuny filed suit against Quin, styled a Petition for Possession, but sought to be found in possession of the alleyway and to evict Quin. The petition also complained that Quin refused to recognize Cuny's ownership of the disputed alleyway. Cuny filed a Supplemental Petition alleging possession of the disputed alleyway by virtue of her ownership, i.e. her purchase of the alleyway from Bonnabel Properties.
Quin filed a Reconventional Demand, alleging that for one year prior to Cuny's recordation of her purchase, Quin had been in peaceable and continuous possession of the disputed property. The Reconventional Demand asked that Quin's right to possession be recognized and her peaceable possession maintained.
At a summary judgment hearing in these proceedings, Cuny confessed Quin's possession of the disputed alleyway, converting Cuny's possessory action to a petitory action. The parties agreed that ownership of the property would be litigated at trial.
At trial on the merits, Cuny asserted ownership of the alleyway by virtue of her purchase from Bonnabel Properties, whereas Quin claimed ownership by virtue of 30 years acquisitive prescription. The trial court's judgment found that Cuny failed to bear her burden of proof regarding ownership. The court found that she did not prove that Bonnabel Properties either owned the property in question or that it purported to represent all of the Bonnabel heirs. The judgment was silent as to Quin's claim of 30 years acquisitive prescription. The final judgment did not abrogate the Summary Judgment entered previously recognizing Quin's possession of the property.
Cuny appeals. On appeal she argues that the trial court erred in not finding that defendant Quin failed to meet the burden of proof required to prove 30 year acquisitive prescription. She argues that the court erred in not finding that Ms. Cuny had validly purchased the alleyway, had the only recorded title to the property, and that the only title in existence was "good against the world." Last, she argues *235 that the trial court erred in denying her motion to re-open the record to receive evidence regarding the availability of title insurance to purchasers of the alleyways.
First, this court notes that Quin's reconventional demand never alleged ownership by virtue of 30 year acquisitive prescription: it simply asked that Quin be maintained in corporeal possession of the property. The parties agreed later, after Cuny confessed to Quin's possession in the summary judgment proceeding, to litigate the issue of ownership. The issue of 30 years acquisitive prescription was litigated; Quin put on testimony and evidence claiming that her family had possessed the alleyway for more than 30 years prior to Cuny's disturbance of their possession. The trial court's Reasons for Judgment do not address 30 year acquisitive prescription, but do state that "Ownership of the alleyway remains in dispute as does the right to convey title." When a judgment is silent regarding an issue that was litigated, it is interpreted as a rejection of that claim. Klein v. BMW of North America, Inc., 97-871 (La.App. 5 Cir.12/30/97), 705 So.2d 1200. Apparently the trial judge found that Quin did not bear her burden of proof on her claim of 30 years acquisitive prescription.[2]
Cuny argues that the court erred in not finding that she had validly purchased the alleyway, had the only recorded title to the property, and that the only title in existence was "good against the world."
To obtain a judgment recognizing his ownership of immovable property, the plaintiff in a petitory action must: (1) prove that he acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession of the property; or (2) prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof. LSA-C.C.P. art. 3651; Griffin v. Daigle, XXXX-XXXX (La.App. 1 Cir.9/22/00), 769 So.2d 720.
Claimants who bring a petitory action are required to prove "title good against the world," that is, an unbroken chain of record title or that they acquired title by prescription; however, they were not obligated to prove a perfect title to the disputed property. Duck v. Guillory, XXXX-XXXX (La.App. 3 Cir.3/3/99), 737 So.2d 91.
Since the trial court found that Quin was in possession of the alleyway, Cuny was required to show title "good against the world." At trial, Cuny's evidence of title and ownership consisted of a Cash Sale from Bonnabel Properties dated January 11, 1994. She presented no "chain of title" documents further back than this one, the sale to her from Bonnabel Properties, her immediate vendor. She produced no documents or other evidence purporting to show how Bonnabel Properties acquired the land or the title they purported to sell to her.
Cuny's witnesses consisted of herself and her brother, Ernest Cuny. Their testimony generally concerned the history of the physical possession of the alleyway. Cuny also testified about the circumstances of her purchase of the alleyway from Bonnabel Properties. She said that when she contacted Bonnabel Properties about purchasing the alleyway, Guion Jones, Bonnabel's President, came to her house with the documents. She testified that Jones told her that he owned the property because "he won his case in *236 court." Cuny admitted that she did not conduct any independent investigation of Bonnabel Properties' title to the alleyway. She failed to subpoena Guion Jones at this trial.
Besides her own testimony regarding her family's various acts of possession of the alleyway since 1952, defendant and plaintiff-in-reconvention, Frankie Mae Quin, called Kevin Heigle (Heigle), a real estate title attorney who was accepted by the court as an expert in real estate title matters. He had approximately 23 years experience in real estate practice. He was very familiar with the circumstances of the alleyways in Bonnabel Place, having dealt with them in title opinions as part of his practice. He testified that the language in the Act of Dedication filed in 1916 by Alfred Bonnabel was unusual from standard dedicatory language. Instead of dedicating the alleyways to public use, he dedicated them to the private use of adjoining landowners. Interpretation of this dedication has created the problems that have plagued the neighborhood for the past 20 years, Heigle testified.
In the course of his practice, Heigle had followed various court cases dealing with the ownership of the Bonnabel alleyways.[3] He felt that, based on the court cases and his investigation of the public records, Bonnabel Properties' claim of ownership of the alleyways was suspect and subject to question. At least one case has held that the ownership of the alleyways in Bonnabel Place was retained by Bonnabel (and his heirs). Heigle testified that he and other real estate lawyers disagreed with this holding, because the alleyways have never been listed in any of the succession proceedings of Bonnabel and/or his heirs. He also expressed concern that the two appellate opinions dealing with the alleyways were reviews of summary judgments and not of full trials on the merits.
Heigle testified that in 1994, at the time Cuny purported to purchase the alleyway, his investigation of the public records indicated that Bonnabel Properties only represented the interests of 16 out of 36 Bonnabel heirs extant, and 7 of those interests were conditional upon Bonnabel Properties obtaining the interest of 100% of the heirs. At the time of trial, that number had grown to around 32 of the 36 heirs, but he discovered no provision in those subsequent transfers that would have cured Bonnabel Properties' incomplete representation of the heirs in 1994. He confirmed that Guion Jones, the president of Bonnabel Properties, is one of the Bonnabel heirs. Heigle admitted that his information was based on examination of the public records (conveyance and succession records), but that he had not spoken with Guion Jones or any other Bonnabel heirs to confirm his conclusions.
*237 Heigle also offered an opinion on what is meant by "title good against the world." He stated that this meant a merchantable title, one that was not suggestive of litigation. Heigle testified that the status of the Bonnabel alleyways has and continues to be the subject of various litigations. He testified that Bonnabel Properties has never established a chain of title for the alleyways in the conveyance records from Alfred Bonnabel to Bonnabel Properties. He also stated that none of the succession records of the various Bonnabel heirs, over the years, have listed the alleyways as property owned by the decedents. Heigle was of the opinion that because of all the irregularities in title that he found regarding the Bonnabel alleyways, the titles were suggestive of litigation and not good against the world.
Considering the evidence in the record and case law, we agree with the trial court that Ms. Cuny did not bear her burden of proof that her title was "good against the world." She produced no chain of title showing that Bonnabel Properties' title was valid. Mr. Heigle's testimony and evidence showed serious defects in the title, not the least of which was the fact that in 1994 Bonnabel Properties did not represent the interests of all of the Bonnabel heirs, who are the purported owners of the alleyways. Ms. Cuny failed to subpoena Guion Jones, who might have provided crucial evidence to her case. The case law is clear that "title good against the world" means one must produce an unbroken chain of record title back or show ownership through acquisitive prescription, neither of which Ms. Cuny did in this proceeding. To merely produce her document "Cash Sale" from Bonnabel Properties is insufficient to show "title good against the world" against a defendant who is in corporeal possession.
Last, Cuny argues that the trial court erred in denying her Motion to Re Open the record to take further evidence. She argued that Mr. Heigle testified that a title was merchantable if title insurance were available, and that in his opinion and experience, no title insurance company would write title insurance on a Bonnabel alleyway. Shortly after trial was concluded, Ms. Cuny alleges that she saw an advertisement in the newspaper stating that title insurance was available for Bonnabel alleyways. She moved to introduce this evidence into the record, which the trial court denied.
We find no error. Our review of Mr. Heigle's testimony shows that the availability of title insurance was but one factor he would consider in determining merchantability of title. It was not a single dispositive factor. After considering this record as a whole, introduction of this newspaper advertisement would not have changed the outcome of this case. Had Ms. Cuny introduced this advertisement at trial, we would still find that she failed to bear her burden of proof.
Accordingly, the trial court's judgment is affirmed.
AFFIRMED.
NOTES
[1] See for instance Parish of Jefferson v. Bonnabel Properties, Inc., 620 So.2d 1168 (La. 1993), and Wood v. Bonomolo, 00-61 (La.App. 5 Cir.5/30/00), 762 So.2d 261.
[2] Quin did not appeal the trial court's judgment that found ownership was still in dispute, since her possession was recognized.
[3] This court takes judicial notice of Parish of Jefferson v. Bonnabel Properties, Inc., 620 So.2d 1168 (La.1993), wherein the Supreme Court, reviewing a summary judgment, decided the "narrow issue" that under the Louisiana Constitution, parishes may not acquire title to immovable property by acquisitive prescription. That decision held that the Parish of Jefferson did not own the alleyways in Bonnabel Place. It did not decide who did own the alleyways.

In Wood v. Bonomolo, 00-61 (La.App. 5 Cir. 5/30/00), 762 So.2d 261, this court reversed a partial summary judgment that had found ownership of the alleyways to be vested in the adjacent landowners. Based upon the language in the 1916 Act of Dedication, this court found that ownership of alleyways in the subdivision were not transferred to the public; rather, the ownership was retained by Mr. Bonnabel (and later his heirs). The dedication merely transferred a servitude of use to the individual landowners. This court could not determine who was the owner of each of the alleyways in the entire subdivision, because there may be issues of acquisitive prescription relative to each individual lot owner.