861 So.2d 618 (2003)
Sheree JONES
v.
Sean PHILLIPS and State Farm Mutual Automobile Insurance Company.
No. 03-CA-636.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 2003.
*620 David A. Strauss, Christian A. Garbett, King, LeBlanc and Bland, New Orleans, LA, for defendants-appellants, Sean Phillips and State Farm Mutual Automobile Insurance Company.
Elizabeth M. Gaudin, Hilary G. Gaudin, Gaudin & Gaudin, Gretna, LA, for plaintiff-appellee, Sheree Jones.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is an auto accident case in which the trial court awarded the plaintiff $20,000.00, but found the defendant driver eighty percent at fault and the plaintiff driver twenty percent at fault, resulting in a net award of $16,000.00 to the plaintiff. The defendants appeal, seeking reapportionment of fault and/or reduction of the damages awarded. We affirm.
The suit arose out of a March 26, 1999 collision between vehicles driven by Sheree Jones and Sean Phillips, which occurred in the parking lot of a Marrero shopping center. Jones filed suit in Second Parish Court for the Parish of Jefferson against Phillips and his insurer, State Farm Mutual Automobile Insurance Company. After trial the court took the matter under advisement for approximately two months, then rendered judgment in favor of the plaintiff. The court found the defendant 80 percent at fault and the plaintiff 20 percent at fault, and awarded the plaintiff $18,794.20. The court set out the following calculations:

1. Pain and Suffering $20,000.00
 (8 month injury × $2500.00)
2. Medicals 2,710.00
3. Rental vehicle 226.10
4. Repair 556.65
 $23,492.75
 Eighty (80%) Percent $18,794.20
 Twenty (20%) Percent $ 4,698.55

Defendants filed a motion for new trial on the grounds that the court erred by awarding damages in excess of the parish court's $20,000.00 jurisdictional limitation (e.g., the total award of $23,492.75 before deduction for comparative fault), that plaintiff did not establish her burden of proving medical causation, and that the awards for both general and medical damages were excessive.
The court granted the new trial motion for the limited purpose of correcting the damages awarded. The court reduced the overall damages awarded to $20,000.00, without itemizing the elements, and reiterated the prior comparative fault determination of 80 percent to the defendant, 20 percent to the plaintiff. After deduction for the 20 percent comparative fault previously attributed to the plaintiff, the final award was $16,000.00. Defendants appeal.
On appeal defendants contend the trial court was clearly wrong in finding defendant Phillips 80 percent at fault and in finding that plaintiff suffered an aggravation of a pre-existing injury. Defendants assert further that the trial court clearly erred in awarding general damages for eight months of treatment when plaintiff was discharged after five months and that the award of $2,500 per month is excessive. Finally, defendants argue the court clearly erred in the award of plaintiff's medical expenses because the plaintiff failed to relate the medical expenses to the March 1999 accident, the clinic double-billed the patient, and the plaintiff's treatment after August 1999 was not necessary.
*621 The only witnesses at the trial were the defendant driver and the plaintiff.
Defendant testified the accident occurred in a parking lot at Lapalco and Barataria Boulevards. He was coming from work in his Chevrolet Blazer and needed to pick up something from the Rite Aid store in the shopping center. He was traveling no more than five to ten miles per hour in the parking lot, parallel to Lapalco, when he saw plaintiff's Ford Escort approaching from his right near an exit to Lapalco. He stopped, but the driver's side of plaintiff's vehicle struck the passenger side of his vehicle. He was unsure, but thought plaintiff may have tried to slow before her car struck his.
He denied that he was driving through the parking lot to avoid the traffic on Lapalco Boulevard and said there was nothing he could have done to avoid the accident. There were no traffic signs in the parking lot indicating he had any obligation to yield or stop.
Phillips said the damage to his car cost about $98.00 to repair. He said plaintiff's car had a broken headlight and there was damage to the hood.
After the accident he asked plaintiff if she was okay and she told him yes. He saw nothing to indicate that she was injured, either in her appearance or her behavior, and she did not indicate she needed or wanted medical care. He said the plaintiff called the police to investigate. Defendant did not receive a citation.
Sheree Jones testified she was employed by Papa John's restaurant in the shopping center at the time of the accident. The collision occurred as she was coming out to deliver a pizza and was about to go onto Lapalco. Before she could get to Lapalco, the other car struck from her left side. She was in a main lane of travel leading to the exit. She said there is a traffic light on Lapalco near that exit and a light that controls traffic coming out of the parking lot at that exit. The light controls the left-hand side of Lapalco and also controls the motorists turning left coming from the other side.
Plaintiff said she first noticed defendant's car right before the accident, when it was approximately a foot away. She said there was nothing she could have done to avoid this accident. Accordingly to the plaintiff, the police were called by the defendant's mother, whom the defendant telephoned after the accident. Plaintiff said she heard defendant tell the police officer that he was trying to avoid traffic by going through the parking lot.
Plaintiff testified her insurer, Allstate, paid for repair of her vehicle, less her deductible of $200.00.
Plaintiff said she was wearing the seat belt, but her body "moved around" in the car when the accident occurred. She said her neck and back were injured. She admitted she had injured her neck and back in a motor vehicle accident in January 1999 (two months before this accident) and that she was still being treated for those injuries when this accident occurred. She stated she had been feeling better, but this accident aggravated her previous injuries by making them hurt more.
Plaintiff was treated for the injuries from this accident at Lafayette Street Medical Center, where she was still undergoing treatment for her pre-existing injuries. She said she was examined on April 9, 1999 and received treatment on the "heat bed," the "cold bed" and the "vibrating bed," as well as hot and cold compresses and chiropractic treatment. She went there three times a week for about eight months. She said she still has problems with her lower back, despite having been discharged from treatment.
*622 Plaintiff admitted to having complaints of lower back pain approximately a year before the January 1999 accident for which she was treated at West Care Medical Center and received a prescription for Flexoril.
On cross examination plaintiff testified that after she reported this accident to her employer, Papa John's, she was instructed to go to driving school. She admitted that she did not make a worker's compensation claim regarding this accident. She admitted she was familiar with the parking lot, knew there was a lane of traffic coming from her left, and knew there was no sign or other marking that would required traffic from that direction to stop or yield. She said, "I figured I had the right of way." She admitted that she did not yield when she approached the intersection of the traffic lanes in the parking lot.
Plaintiff also admitted that she went to her attorney's office that day before she went to the doctor. She admitted that her counsel in this case also was representing her regarding the January 1999 accident and that she had recovered money from that accident. She admitted that she was in an accident for which she was found at fault before the January 1999 accident, but for which she made no claim.
She admitted she had a history of neck and back pain prior to the January 1999 accident and that she has rheumatoid arthritis, which causes pain in her back, neck, fingers, legs and toes. She admitted seeking treatment for back pain as far back as May 1998. She said that at the time of the January 1999 accident she was not having pain, but admitted that in January 1999 she stated on her medical history form she was taking painkillers. She testified she did not know that the doctors at Lafayette St. Medical Center attributed all of her medical treatment there to the January 1999 accident.
On redirect plaintiff said she had not made a worker's compensation claim because she was afraid it might affect her employment. She also clarified that she had not been diagnosed with rheumatoid arthritis until February 2000, after both the automobile accidents. She stated she had been having back pain as far back as 1998.
Review of the medical records show the reports of the Lafayette St. Medical Center all reference the findings as resulting from the accident that occurred in January 1999. The diagnosis was neck sprain/strain (whiplash injury); lumbar sprain/strain; contused left knee. She was treated with joint mobilization, myofacial release, trigger point therapy, hot/cold packs, mechanical traction and myofacial electrical stimulation three times a week and was discharged from care on August 27, 1999.
Dr. J.O. Trice of the Lafayette St. Medical Center admitted there was nothing in the medical record from either a medical doctor or a chiropractor that specifically says any of the treatment plaintiff received at the clinic related to the March 1999 accident. He also admitted that the Lafayette St. Medical Center had assigned a second chart number to plaintiff when she came in after the March 1999 accident and that many of her therapy sessions for the remainder of her treatment period were billed to both chartsthe chart assigned from her initial visit following the January 1999 accident and the chart assigned following the March 1999 accident. Defense counsel referred to this as "double billing" and Dr. Trice was unable to explain why the practice was employed at the medical center.
Dr. Trice, reviewing the patient welcome sheet that plaintiff filled out on April 9, 1999, noted that plaintiff indicated she was *623 experiencing pain in two areas of which she had not complained in January 1999: the chest and her left arm. Dr. Trice admitted he had not examine plaintiff following the second accident. Her therapeutic treatments were administered by employees of the medical center or by Dr. Critchfield, the chiropractor associated with the medical center.
Nevertheless, Dr. Trice stated that based on his examination of the chart, he believed the second accident would have exacerbated plaintiff's symptoms. He referred specifically to the welcome sheet plaintiff completed on April 9, 1999, in which she stated, "I was got [sic] better from another accident 1-12-99 when I got into this accident March 99 ... hurting worse now than before ... neck, back, left arm."
Dr. Trice admitted that accepted medical practice is to render an opinion about the cause of a patient's problem based not only on the patient's history but also on physical examination of the patient and he admitted that he had not re-examined the plaintiff since January 1999.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
If the trial court's findings are reasonable in light of the record viewed in its entirety, the appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So.2d at 844.
The manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, 549 So.2d at 844-845.
In this case, the testimony of each party directly contradicts the testimony of the other party in important respects. For example, defendant testified he stopped to try to avoid hitting plaintiff's car; plaintiff testified that was not so. Plaintiff said she heard defendant state he was driving through the parking lot to avoid the traffic on Lapalco Boulevard; defendant denied that he said that or that he was in the parking lot for that reason. Hence, credibility determination was the essence of the trial judge's decision.
It is true, as defendant-appellant asserts, that even a favored driver must keep a lookout to try to avoid an accident. Nevertheless, the trial judge was within his discretion to find that defendant did not see appellee and that he did not stop to try to avoid the collision. Every negligence case must be decided on its own facts and circumstances. Roberts v. Benoit, 605 So.2d 1032, 1055 (La.1991) (on rehearing). On the evidence before us we are unable to say the trial judge was clearly wrong in his evaluation of the conflicting testimony.
Similarly, with regard to appellant's assertion that the trial court erred in finding that this accident aggravated plaintiff's injury from an earlier accident, we find no manifest error. The defendant must take the victim as he finds her and he is responsible for all natural and probable *624 consequences of his tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. 625 So.2d at 1006.
Plaintiff testified at trial that her injury from the January accident had been aggravated by the March accident and that she had been feeling better when the second accident occurred, but the accident made it hurt more. Further, the Lafayette St. clinic records show she complained that the second accident exacerbated her symptoms and caused symptoms she had not reported after the first accidentspecifically, sleep loss, irritability, back stiffness and/or pain in her arm and shoulder. In addition, plaintiff was unable to work immediately following the second accident, unlike the first accident, and after the second accident she complained that almost all daily activities had become painful. Further, plaintiff continued to seek treatment at the clinic through November 1999 and she testified at trial that she still suffered with the injuries from this accident.
Although Dr. Trice admitted he did not examine plaintiff following the second accident, he testified that the second accident would have exacerbated her symptoms. It was within the trial judge's discretion to choose how much weight to give to the medical testimony and documentary evidence. We cannot say the court was manifestly erroneous in determining that plaintiff's injuries were aggravated and/or increased by the second accident.
With regard to the general damages award, appellant contends the trial court awarded the plaintiff $2,500 per month for eight months for a soft-tissue injury and that such an award was an abuse of discretion. We note, however, that the judgment on appeal does not itemize the damages, but only gives a single award. The original judgment had listed amounts for general and special damages, but we cannot be certain that the second judgment was intended to have the same breakdown. The trial judge stated he was granting the motion for new trial only to correct the prior award because it exceeded the jurisdictional limits.
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
* * *
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact.... Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion....
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.... It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. [Citations omitted.] *625 Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993).
When a judgment is for a lump sum presumed to award all items of damages, an appellant's burden of proving an abuse of discretion is more difficult because the intent to award a specific amount for a particular item is not readily ascertainable. Abadie v. Metropolitan Life Ins. Co., 00-352, p. 20 (La.App. 5 Cir. 4/11/01), 804 So.2d 11, 24. Considering these principles, we are unable to find the trial judge committed a clear abuse of his great discretion.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the defendants-appellants.
AFFIRMED.