875 So.2d 988 (2004)
Shahid Iqbal ABBASI
v.
STATE FARM INSURANCE COMPANY, Shane Jackson and Shannon Ramirez.
No. 04-CA-44.
Court of Appeal of Louisiana, Fifth Circuit.
May 26, 2004.
Rehearing Denied July 13, 2004.
*990 Salvador M. Brocato, Jim S. Hall, Metairie, LA, for Plaintiff/Appellee.
David A. Stauss, Bryan J. De Tray, Christian A. Garbett, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
The present appeal is taken from a final judgment of the First Parish Court for the Parish of Jefferson. Plaintiff/appellee, Shahid Iqbal Abbasi, filed suit against defendants/appellants Shannon Ramirez, Shane Jackson, and State Farm Mutual Insurance Company. Mr. Abbasi alleged that on October 27, 2000, he was injured when the vehicle which he was driving was struck by an automobile owned by Ms. Ramirez but operated by Mr. Jackson. State Farm answered the petition on its own behalf and on behalf of its insured, Ms. Ramirez, and filed an Exception of No *991 Cause of Action. Service was never made on either Mr. Jackson or Ms. Ramirez. At the conclusion of the trial on the merits, State Farm orally moved to dismiss Mr. Jackson because he had not been served with the petition. In the judgment resulting from the trial, the court declined to dismiss Mr. Jackson, and determined that Mr. Abbasi "made adequate effort to locate the driver, Shane Jackson and requested service timely. Should this Court follow defendants' argument, then parties who evade service likewise prevent the insurer from being liable."
The court found Mr. Jackson was at fault, and that Mr. Jackson was operating Ms. Ramirez's vehicle with her permission. The court also determined that Mr. Abbasi was comparatively negligent to the degree of 30%. A judgment of $7500.00 for pain and suffering was awarded, plus $750.00 for medical expenses, and the judgment was reduced by 30%.
At trial, State Farm agreed to stipulate that it's insured, Ms. Ramirez, gave permission to Mr. Jackson to operate her vehicle, and that the insurance policy in effect at the time of the accident covered the user, Mr. Jackson.
On appeal, State Farm contends that insofar as there is judgment against Mr. Jackson, such is an absolute nullity as he was never served with process. We agree. Procedural due process requires an opportunity to be heard, in addition to notice of the pendency of an action against an individual.[1] Under La. C.C.P. art. 1201, a judgment rendered against a defendant who has not been validly cited and served with the petition is absolutely null, even if there is actual notice of the suit. Without such citation and service of process, the court does not have jurisdiction over the person of the defendant.[2] Further, La. C.C.P. art. 2002 A(2) provides that among those judgments which may be annulled are those rendered "against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken." Therefore, the court did not have personal jurisdiction over Mr. Jackson to render a judgment against him.
State Farm next alleges that the trial court made no specific finding that Ms. Ramirez was at fault. In his petition, Mr. Abbasi urged that Ms. Ramirez was negligent in allowing Mr. Jackson to operate her vehicle when she knew or should have known that he was not capable of doing so safely, and that she failed to properly and adequately supervise him.
Mr. Abbasi testified that on the day of the accident, he was driving his cab in the right lane on Cleary Avenue, heading toward Veterans Boulevard. In that lane, one must turn right onto Veterans. The lane was clear, but traffic in the left lane was backed up due to a red light. The car driven by Mr. Jackson came straight across Cleary from a parking lot to the left, and Mr. Abbasi's vehicle collided into it.
Ms. Ramirez testified that she was a passenger in her car that day, as Mr. Jackson drove. In crossing Cleary, there were cars in the left lane on both sides of her vehicle. A white van stopped in the opposite lane and motioned the Ramirez car through; Ms. Ramirez did not know *992 whether Mr. Jackson could see past the van into the right lane. She did not see the Abbasi vehicle before the accident, but thought that her car was completely clear of the left lane when it was struck. Just prior to the accident, after Mr. Jackson turned and was in front of the van, he drove very slowly and looked to his right to see if there was any oncoming traffic.
Negligence claims under La. Civ. Code art. 2315 are examined using a Duty/Risk analysis. The Duty/Risk analysis is a set of five separate elements that takes into account the conduct of each party and the peculiar circumstances of each case.[3] One of the necessary considerations in the Duty/Risk analysis is to determine what, if any, duties were owed by the respective parties. Generally, there is an almost universal legal duty on the part of a defendant in a negligence case to conform to the standard of conduct of a reasonable person in like circumstances. Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case, and the relationship of the parties.[4]
In Louisiana, owners of motor vehicles are ordinarily not personally liable for damages which occur while another is operating the vehicle. Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver.[5] Imputation of negligence of one person to another is allowed only when there exists between them some relation of master or superior and servant or subordinate or other similar relationship. The relationship between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relationship between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person who was actually negligent.[6]
Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower unless he knew or should have known that the borrower was physically or mentally incompetent to drive; if the lender knew or should have known of the borrower's incompetence then he is responsible for the harm resulting from the incompetent operation of the vehicle.[7]
The evidence at trial discloses no evidence that Mr. Jackson was physically or mentally incompetent to drive, or that if any such incompetence existed, that Ms. Ramirez knew or should have known it. Moreover, there was no showing as to why Mr. Jackson was driving the car, that he was on a mission for Ms. Ramirez, or that he was either her agent or employee. Mr. Jackson and Ms. Ramirez were not married. Based on the evidence, we are unable to conclude that there existed a common or joint enterprise at the time of the accident, or that Ms. Ramirez had a legal right to control the actions of Mr. Jackson. In its judgment, the trial court made no finding of fault or negligence *993 against Ms. Ramirez. When a judgment is silent regarding an issue that was litigated, it is presumed to be a rejection of that claim.[8] Under the facts and circumstances of the instant case, we see no manifest error in the refusal of the trial court to assess liability to Ms. Ramirez.
We find no error in the assessment of the comparative fault of Mr. Jackson and Mr. Abbasi. However, we consider the stipulations agreed to by State Farm that its insured, Ms. Ramirez, gave permission to Mr. Jackson to operate her vehicle, and that the insurance policy in effect at the time of the accident covered the user, Mr. Jackson. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of law. Such agreements are the law of the case.[9] Thus, we note the elements necessary to establish Mr. Abbasi's case against State Farm were sufficiently presented in the stipulation itself.
State Farm argues that because "the claims against Shane Jackson should have been dismissed, and the claims against Ms. Ramirez were properly rejected," the only defendant who was properly before the court was State Farm. It further urges that under La. R.S. 22:655(B)(1), the claims against it must be dismissed because Mr. Abbasi had no right to proceed directly against the insurer. This assignment of error is a misapplication of the applicable law and facts.
Under R.S. 22:655(B)(1), a direct action may be brought against the insurer alone only when:
(a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
(b) The insured is insolvent;
(c) Service of citation or other process cannot be made on the insured;
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons;
(e) When the insurer is an uninsured motorist carrier; or
(f) The insured is deceased.
It has been held that under this statute, direct actions against insurers are strictly limited to those five enumerated circumstances, and when the insured is dismissed, there is no direct right of action against the insurer.[10]
We have found that a valid judgment could not be taken against Mr. Jackson personally because he was not served with process. (Nevertheless, he has not been dismissed from the proceedings nor does the appellate record indicate that he has filed a petition to annul the judgment.) Further, it is true that Ms. Ramirez was not personally served with a copy of the petition. However, Ms. Ramirez did not object to jurisdiction, but rather personally appeared before the court at trial. A party may waive an objection to the jurisdiction by an appearance of record, which *994 includes filing a pleading or appearing at a hearing.[11] State Farm filed its answer on its own behalf as well as that of Ms. Ramirez. Mr. Abbasi properly proceeded against both State Farm and its insured, Ms. Ramirez, at trial. This matter is distinguishable from other cases cited by State Farm, since in the present instance, the insured was never dismissed by the trial court.
By virtue of the stipulations at trial, Mr. Jackson was covered under the terms of State Farm's policy. In this case, the direct action statute does not apply to release State Farm from the action.
State Farm alleges that Mr. Abbasi failed to prove that his injuries were caused by the accident at issue. Mr. Abbasi had been involved in an earlier accident in September of 2000, and had complaints of a right ankle and neck injury. At this time, he was being treated at the general surgery office of Dr. Stewart Altman. According to the medical records, by October 10, 2000, Mr. Abbasi was feeling better. On his first doctor visit 4 days after the accident at issue, (the date of a previously scheduled appointment) he saw Dr. Qureshi at Dr. Altman's office. Medical notes indicate that on this visit of October 31st, Mr. Abbasi stated that his neck felt better. A somewhat confusing medical report dated November 14, 2000, states that on October 31, 2000, Mr. Abbasi was examined by Dr. Qureshi, then later states that an examination was not performed because the patient reported a new accident, and was discharged from the first accident. Dr. Altman later examined Mr. Abbasi in November 2000, and noted that Mr. Abbasi did not feel worsened neck pains until October 31, 2000, 4 days after the accident. According to Dr. Altman, it is not unusual for a patient with soft tissue injury to start feeling pain several days after the accident. It was also noted that there was new back pain, and pain in the left ankle was new. There were muscle spasms in the cervical and lumbar spines, and a decreased range of motion in his back. The diagnosis was a cervical and trapezius muscle sprain with worsening of preexisting sprains, a new lumbosacral sprain, and new left ankle abrasion. More probably than not, assuming the patient history is correct, the injuries were related to the October 27th accident. Mr. Abbasi was put on light duty work restrictions, and some physical therapy was prescribed.
Dr. Qureshi saw Mr. Abbasi on a visit on December 12th, and noted the neck pain was the same. No notations were made on back pain, although ultrasound was recommended for his neck and right upper back. In March, 2001, lumbar spine spasms were noted by Dr. Altman, as well as decreased range of motion in the cervical spine. Mr. Abbasi still had symptoms in his neck and back, but did not return to Dr. Altman after this date. Dr. Altman testified that from the date of the accident through March 12, 2000, Mr. Abbasi had consistent treatment for the injuries related to the accident.
On cross examination, Dr. Altman testified that since the record of October 31st did not so indicate, that Mr. Abbasi did not inform Dr. Qureshi of the second accident at the time of the October 31st visit. Further, he agreed that between November 10, 2000 and March 12, 2001, there was no documented complaint of back pain. Further, in his deposition the doctor agreed that he stated that the spasms could have been related to the first accident. However, *995 he based his opinion on Mr. Abbasi's statement that he felt worse after the second accident. Dr. Altman stated that he had no reason to doubt Mr. Abbasi's credibility.
Mr. Abbasi testified that his neck was getting better until the second accident. Before the accident in question, he had not injured his back or his other ankle. State Farm points to apparent discrepancies in his testimony and in the medical records as a challenge to Mr. Abbasi's credibility.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
If the trial court's findings are reasonable in light of the record viewed in its entirety, the appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong.
The manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact-finder can be aware of the variations in demeanor and tone of voice that bear o heavily on the listener's understanding and belief in what is said.[12]
While we do find some discrepancies in the testimony, we do not find them to have been of such magnitude to compel us to conclude that the trial court was manifestly erroneous in believing it. Rather, it is clear that there was somewhat of a language barrier which affected Mr. Abbasi's testimony. In addition, there was no question of Dr. Altman's credibility as a witness. Granting the trial court the proper deference, we find no error in its credibility determinations.
There was sufficient evidence produced in the medical records and testimony to prove that an exacerbation of Mr. Abbasi's neck injury occurred. The defendant must take the victim as he finds him and he is responsible for all natural and probable consequences of his tortious conduct.[13] When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation.[14]
Further, there were indications that Mr. Abbasi received some therapy for back pain following the second accident, although documented complaints of such pain are absent from the record. There was also evidence that Mr. Abbasi injured his ankle in the accident. It was within the trial judge's discretion to choose how much weight to give to the medical testimony and documentary evidence, and we cannot say the court was manifestly erroneous in determining that Mr. Abbasi proved that he suffered pain from his injuries in the accident for four and one-half months.
State Farm urges that the damage award was excessive. Mr. Abbasi has answered the appeal, alleging that the damage award was insufficient.
*996 The trial court has great discretion in the assessment of damages. An appellate court should increase or decrease an award only when the amount is beyond that which a reasonable trier fact could assess for the effects of the particular injury upon the particular plaintiff under the circumstances of the case.[15] Considering the evidence produced in this case, we see no abuse of discretion in the damage award.
For the foregoing reasons, the portion of the judgment which finds that Mr. Jackson should not have been dismissed from the suit is set aside. In all other respects, the judgment is affirmed. State Farm is assessed costs of this appeal.
SET ASIDE IN PART; AFFIRMED IN PART.
NOTES
[1] In re Justice of Peace Landry, XXXX-XXXX (La.6/29/01), 789 So.2d 1271.
[2] Id.; Poret v. Billy Ray Bedsole Timber Contractor, Inc., 31,531 (La.App. 2 Cir. 1/22/99), 729 So.2d 632 citing U.S. Fidelity and Guaranty Co. v. Hurley, 96-1421 (La.App. 4 Cir. 8/6/97), 698 So.2d 482.
[3] Joseph v. Dickerson XXXX-XXXX (La.1/19/00), 754 So.2d 912, and the cases cited therein.
[4] Id.
[5] Aupied v. Joudeh, 96-202 (La.App. 5 Cir. 4/9/97), 694 So.2d 1012, writ denied 97-1583 (La.10/10/97), 703 So.2d 605.
[6] Id.
[7] Oaks v. Dupuy, 32,070, (La.App. 2 Cir. 8/18/99), 740 So.2d 263.
[8] See Cuny v. Quinn, 03-649 (La.App. 5 Cir. 10/28/03), 860 So.2d 232; Klein v. BMW of North America, Inc., 97-871 (La.App. 5 Cir. 12/30/97), 705 So.2d 1200.
[9] Becht v. Morgan Bldg. & Spas, Inc., 2002-2047 (La.4/23/03), 843 So.2d 1109.
[10] White v. State Farm Ins. Co., XXXX-XXXX (La.App. 4 Cir. 11/26/03), 862 So.2d 263; Foltmer v. James, XXXX-XXXX (La.App. 4 Cir. 9/12/01), 799 So.2d 545.
[11] See Glass v. Alton Ochsner Medical Foundation (Ochsner Foundation Hosp.) XXXX-XXXX (La.App. 4 Cir. 11/6/02), 832 So.2d 403; writs denied XXXX-XXXX (La.3/14/03), 839 So.2d 37, 2002-2977 (La.3/14/03), 839 So.2d 36.
[12] Jones v. Phillips, 03-636 (La.App. 5 Cir. 11/12/03), 861 So.2d 618, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
[13] Jones v. Phillips, supra.
[14] Id.
[15] Dorvilier v. Gagliano, 2002-2765 (La.App. 4 Cir. 8/27/03), 855 So.2d 393.