943 So.2d 515 (2006)
Stephanie Ann Wille, Deanna Wille, Patricia Wille, Wife of/and John WILLE
v.
Charles G. COURTNEY, Lana M. Howell, Dane R. Howell, U.S. Agencies, Allstate Insurance Co. and ABC Insurance Co.
No. 06-CA-231.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
*516 Jerome M. Volk, Jr., Michael E. Escudier, Kenner, Louisiana, William E. LeBlanc, Donaldsonville, Louisiana, for Plaintiffs/Appellants, Stephanie Ann Wille, Deanna Wille, Patricia Wille, Wife of/and John Wille.
Robert M. Johnston, Stacy R. Palowsky, New Orleans, Louisiana, for Defendant/Appellee, Dane R. Howell.
Richard T. Reed, Daniel A. Reed, Baton Rouge, Louisiana, for Defendant/Appellee, Zurich/Maryland Insurance Company.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
This appeal arises in an automobile accident case. Most of the defendants have settled except one defendant and his insurer. The trial court granted separate summary judgments in favor of the defendant and his insurer, from which the plaintiffs appeal. We affirm.

FACTS
The accident occurred on May 10, 1998 on Highway 61 near Gramercy in St. James Parish, Louisiana. Stephanie Wille was driving her 1998 Nissan automobile eastbound, with several passengersDeana Wille, Patricia Wille, and John Wille when her car collided with a 1998 Ford Escort that was pulling out from a private parking lot. The Ford was driven by Charles Courtney, with Lana Howell as passenger. Courtney and Lana Howell were on a date. Lana Howell was an owner of the Ford, and Courtney was driving with her permission. The Ford's registration papers also listed Lana Howell's father, Dane Howell, as an owner.
The Willes all sustained injuries and filed suit against Charles Courtney, Lana Howell, and Dane Howell, and their insurers, as well as against the Willes' own uninsured motorists insurance carriers.[1] All the defendants settled and were dismissed except for Lana Howell, Dane Howell, and Dane Howell's insurer, Zurich/Maryland Insurance Company (hereafter "Zurich").[2]
Dane Howell and Zurich each brought a motion for summary judgment. Dane Howell's motion asserted he is not liable because he acted as a co-signer in the purchase of the Ford Escort only so his daughter could purchase the car through the Ford Credit Program. He had never met Charles Courtney before the accident at issue, and he did not give Courtney permission to operate the Ford Escort. *517 Lana Howell was 21 years old at the time of the accident and she and Charles Courtney were on their first date. Charles Courtney was not on a mission for Dane Howell, Courtney was neither an agent nor an employee of Dane Howell, and Dane Howell was not negligent in entrusting the vehicle to Courtney because he did not give him permission to drive it. Thus, Dane Howell contended he is neither directly nor vicariously liable for the acts of either Charles Courtney or Lana Howell.
Zurich's motion for summary judgment argued there is no liability by Zurich and no possibility of coverage under any clauses of the policy, because Dane Howell had no ownership interest in the Ford Escort, the Ford was not a replacement vehicle for any vehicle shown in the policy declarations, and it was not a newly acquired additional vehicle. Further, both Lana Howell and her previous vehicle had been removed from the Zurich policy more than 30 days before the Ford Escort was purchased, so that the Ford could not be considered a replacement of Lana's previous vehicle for coverage by Zurich. Zurich asserted that the Ford Escort was purchased for Lana Howell's exclusive use, Dane Howell signed the papers on the Ford only so that Lana could buy the vehicle, Dane Howell never drove, rode in, or used the vehicle, and Dane Howell's actions amounted to a manual donation of the vehicle to Lana Howell. Thus, Zurich argued, Dane Howell was not the co-owner of the Ford.
The trial court found these arguments persuasive and granted summary judgment, with written reasons for judgment, as to both Dane Howell and Zurich.
On appeal, the plaintiffs assert the trial court erred in the following respects: (1) The trial court completely disregarded jurisprudence of this Circuit regarding the issues of liability and insurance coverage as to third persons as well as automatic coverage, relying instead on jurisprudence of the Second Circuit. (2) The trial court focused on the deposition testimony of Dane Howell and Lana Howell with regard to intent, contrary to the law and the conflicting genuine issues of fact created thereby. (3) The trial court erred in its analysis of the facts in the case of Abbasi v. State Farm Ins. Co., 04-44 (La.App. 5 Cir. 5/26/04), 875 So.2d 988, with regard to the issue of intent and the misapplication to the issue of vicarious liability.

ANALYSIS AND LAW
The liability discussions in the briefs contained much analysis of Dane Howell's ownership interest in the Ford Escort, because although his name was listed on both the vehicle registration papers as well as the financing documents, Dane Howell asserted he did not intend to own the vehicle, but only signed the papers to facilitate his daughter's obtaining the car. Except for signing the papers, he had nothing to do with the car.
We look, first, at Dane Howell's personal liability exposure, and second at the liability of Zurich.
Liability of Dane Howell
The trial court determined that Dane Howell could not be personally liable for the accident because there was no showing that Charles Courtney was on a mission for Dane Howell, Courtney was neither an agent nor employee of Dane Howell, and there was no showing that Dane Howell negligently entrusted the Ford to Courtney. Dane Howell had never met Courtney prior to the accident. Lana Howell was an adult and she was on a date with Courtney. The court pointed out that a "date" does not constitute "an errand for the benefit of both" ("both" referring to Lana Howell and Dane Howell). There was nothing to establish any *518 connection between Courtney and Dane Howell. Under this analysis, even accepting that Dane Howell was a co-owner of the car, he is absolved of liability for the plaintiffs' injuries.
The trial court relied on Abbasi v. State Farm Ins. Co., 04-44 (La.App. 5 Cir. 5/26/04), 875 So.2d 988, writ denied, 04-2076 (La.9/24/04), 882 So.2d 1135. In that case this Court held,
In Louisiana, owners of motor vehicles are ordinarily not personally liable for damages which occur while another is operating the vehicle. Exceptions to this rule occur only when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver. Imputation of negligence of one person to another is allowed only when there exists between them some relation of master or superior and servant or subordinate or other similar relationship. The relationship between them must be one invoking the principles of agency, or the persons must be co-operating in a common or joint enterprise, or the relationship between the parties must have been such that the person to whom the negligence is imputed must have had a legal right to control the action of the person who was actually negligent. [Footnotes omitted.]
Abbasi, 04-44, p. 5, 875 So.2d at 992.
On appeal the plaintiffs assert the trial court erred in relying on the Abbasi case because the situation in that case is not comparable to the facts in this case. There was no co-owner involved. The plaintiffs assert that where, as here, there was a co-owner of the vehicle, the negligence of one co-owner is imputed to the other, so that Dane Howell is vicariously liable through the negligence of Lana Howell.
However, the negligence of one person may be imputed to another only when there exists between them some relation of master and servant, superior and subordinate, or other similar relationship. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, 152 (1963). The relationship between them must invoke the principles of agency, or they must be co-operating in a common or joint enterprise, or the person to whom the negligence is imputed must have had a legal right to control the action of the person who was actually negligent. Id. "Unless a plaintiff can be held responsible, as a matter of law, for the torts of the person whose negligence is sought to be charged to him the doctrine of imputed negligence cannot be applied." Id., at 153.
As the trial court pointed out, Lana Howell was an adult, on a first date with Charles Courtney. There is nothing to indicate that the date was for the benefit of Dane Howell, that it was any type of "joint venture" with him, or that he exercised any control or authority over Lana Howell's decisions in driving the car or allowing another person to drive the car.
Considering the above, we find no error in the trial court's granting of summary judgment in favor of Dane Howell.
Liability of Zurich
The plaintiffs argue that Zurich is liable under the terms and conditions of its policy for the acts of Dane Howell, Lana Howell, and Charles Courtney.
The Zurich policy states, "We will pay damages for `bodily injury' or `property damage' for which any `insured' becomes legally responsible because of an auto accident." (Part ALiability Coverage, Insuring Agreement, A)
"Insured" as used in this Part means:

*519 1. You or any "family member" for the ownership, maintenance or use of any auto. . . .
2. Any person using "your covered auto."
3. For "your covered auto," any person . . . but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4. For any auto . . ., other than "your covered auto," any other person . . . but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part.
(Part ALiability Coverage, Insuring Agreement, B)
The Definitions provide that "you" and "your" refer to the "named insured" shown in the Declarations; and the spouse if a resident of the same household. (Definitions, A) "Family member" means "a person related to you by blood, marriage or adoption who is a resident of your household." (Definitions, F) "Your covered auto" means:
1. Any vehicle shown in the Declarations.
2. Any of the following types of vehicles on the date you become the owner:
a. a private passenger auto. . . .
This provision (J.2.) applies only if:
a. you acquire the vehicle during the policy period;
b. you ask us to insure it within 30 days after you become the owner. . . .
If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.
If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.
(Definitions, J)
The policy states, "We do not provide Liability Coverage for the ownership, maintenance or use of . . . [a]ny vehicle, other than `your covered auto,' which is . . . owned by any `family member'. . . ." (Exclusions, B.3)
Thus, the parties and the trial court focused on whether Dane Howell was truly co-owner of the Ford Escort because his ownership status is crucial to establishing whether the car was covered by the Zurich policy. If the car is determined to be owned only by Lana Howell, the car cannot be covered by the Zurich policy under Exclusion B.3.
The uncontradicted evidence offered in support of the motions for summary judgment established that Dane Howell did not intend to purchase the car on behalf of his daughter. Rather, he signed the vehicle financing and title application papers only because the car dealership required him to do so in order to extend credit to his daughter. He never used the car in any way. Lana Howell paid for an insurance policy on the car with U.S. Agencies, on which policy Dane Howell was specifically excluded from coverage. Dane Howell never notified Zurich of the acquisition of the car and, in fact, several months prior to Lana's purchase of the car he had her name removed from his policy as an operator of the vehicles listed on the policy. He also removed her prior vehicle (a 1986 Ford Ranger pickup truck) from the listing *520 of covered vehicles on the policy declarations.
In Pendleton v. Ricca, 232 So.2d 803 (La.App. 4 Cir.1970), the issue was whether Ricca, the named insured, was the owner of the vehicle involved in the accident. Ricca purchased the vehicle in his own name, but with money supplied by his teenage son, for the purpose of providing his son with transportation. Ricca put the car in his name for convenience only.
In Pendleton, the policy defined "owned automobile" as being, among other things, "a private passenger . . . automobile ownership of which is acquired by the named insured during the policy period provided," provided the named insured notified the company "during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile."
The Fourth Circuit concluded that, "as to third persons, including [Ricca's insurance company], the father was the legal owner of the car, irrespective of the status of ownership as between the father and his minor son." Pendleton, 232 So.2d at 807. Thus, the court held, "The Plymouth was automatically covered under the terms of the policy the moment Joseph C. Ricca purchased it and such automatic coverage continued for a period of 30 days or until the end of the policy period, whichever was shorter, irrespective of notice to the insurer." Id. "Since the accident in this case took place within the notice period the lack of notice to the insurer did not defeat the automatic coverage of the newly acquired automobile." 232 So.2d at 808.
In contrast, in Dinkins v. Lyons, 295 So.2d 888 (La.App. 2 Cir.1974), defendant Lyons was listed on the title as owner of the car. However, Lyons had intended only to assist his young son-in-law in establishing credit to purchase the vehicle. Lyons could not read and his writing was limited to signing his name. He did not understand he was signing the papers as owner. All payments were made by his son-in-law, and Lyons never drove the vehicle or had possession of it.
The issue before the court in Dinkins was whether the registration of the automobile title in Lyons' name was conclusive as to the question of ownership to determine whether Lyons' automobile liability insurer insured the subject vehicle under the "newly acquired vehicle" clause. The Second Circuit concluded that Lyons was not the real owner of the car at the time it was registered in his name, and thus no coverage was afforded under his policy.
Zurich urges this Court to follow the trial court in finding that the reasoning of Dinkins applies rather than the reasoning of Pendleton, on the ground that in Dane Howell's case, as in Dinkins v. Lyons, the co-owner (or owner) did not intend to purchase the vehicle as either a replacement or newly-acquired vehicle for his own use, but was merely assisting a family member to obtain transportation for that family member's exclusive use. Zurich contends that Dane Howell's action in signing the papers falls within La.C.C. art. 1950's definition of error as to the nature of the contract, so that his role as to co-ownership should be vitiated through the "error" vice of consent.
In addition, Zurich contends that even if Dane Howell is considered to have been co-owner of the Ford Escort, his actions were tantamount to a manual donation of a corporeal movable: He never acted as an owner of the car; he never took possession of the car, he never sat in the car, he never drove the car, and he never made payments on the car. He did nothing more than sign a document to assist his daughter in purchasing the car.
Zurich points to Touchet v. Guidry, 550 So.2d 308 (La.App. 3 Cir.1989), in which *521 the Third Circuit found that a vehicle owner's verbal donation of a car to her brother was an effective transfer of ownership between the parties, despite lack of compliance with state requirements on documentation, so that there was no coverage available for the brother under the original owner's insurance policy issued after the transfer.
The manual gift of a corporeal movable accompanied by real delivery is not subject to any formality. La.C.C. art. 1539. The Touchet court pointed out that "under Louisiana law, title to motor vehicles, though imperfect, may be transferred between the parties in accordance with the provisions of the Civil Code even though they have not complied with the Vehicle Certificate of Title Law (LSA-R.S. 32:701 et seq.)." Touchet, 550 So.2d at 313. See also, Scott v. Continental Ins. Co., 259 So.2d 391, 394 (La.App. 2 Cir.1972); Soileau v. Soileau, 95-578 (La.App. 3 Cir. 11/2/95), 664 So.2d 551.
We agree with Zurich's premise that Dane Howell's actions were tantamount to a manual gift of a corporeal movable. He gave full possession, use and ownership of the Ford Escort to his daughter, and had no intention of retaining any ownership of the vehicle at all. Because he had no ownership interest in the vehicle when it was acquired, it cannot be covered as either a replacement vehicle or a newly-acquired vehicle under the Zurich policy.
We conclude there is no genuine issue of material fact that would preclude summary judgment.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Courtney's insurer was Kentucky Farm Bureau Mutual Insurance Company ("Kentucky Farm Bureau"); Lana Howell's insurer was U.S. Agencies Casualty Company, Inc. ("U.S. Agencies"); Dane Howell's insurer was Zurich/Maryland Insurance Company ("Zurich"). The plaintiffs all were insured by Allstate Insurance Company ("Allstate").
[2] The record contains orders that dismissed Charles Courtney and Kentucky Farm Bureau, Allstate, and U.S. Agencies (which had filed a concursus proceeding and had deposited its policy limits in the court registry). All those orders contain reservations of rights against any and all other parties. There are no dismissals of Lana Howell, Dane Howell, or Zurich.